[1] This is an appeal from a final judgment of the Court of Common Pleas of the City of Hannibal, Missouri, wherein defendant Henry Minor was found guilty of violating a city ordinance. The cause was first tried in the Recorder's Court of said city where defendant was found guilty and a fine assessed against him in the sum of $3.00 and costs. He appealed to the Hannibal Court of Common Pleas, where, upon a trial before the court without a jury, he was found guilty and fined $3.00 and costs and ordered committed to the city jail in custody of the City Marshall until such fine and costs be paid. The Court of Common Pleas also overruled defendant's combined Motion to Quash and Plea to the Jurisdiction which had been filed in and overruled by the Recorder's Court. This combined motion and plea alleged that the City of Hannibal had no right or authority from its charter nor from any statute of the State to pass the ordinance in question. After his conviction in the Court of Common Pleas defendant duly appealed to this court.
[2] The amended information upon which the prosecution was based charged that from January 1, 1948, to April 1, 1948, there was in full force and effect in the City of Hannibal, Missouri, an ordinance known as General Ordinance No. 26, originally approved July 10, 1939, as amended by ordinance approved December 16, 1946, entitled "An Ordinance In Relation to City Licenses and the Regulation of Businesses"; that under said ordinance it was required that any person engaged in the business of an automobile repair shop "shall obtain therefor a license and pay a license tax therefor to the City of $25.00 per annum." The information further alleged that at divers times between the 1st day of January, 1948, and the 1st day of April, 1948, defendant Henry Minor did wilfully, intentionally and unlawfully violate said ordinance by engaging in the City of Hannibal in the County of Marion and the State of Missouri, in the business of operating an automobile repair shop without having obtained a license therefor from the City of Hannibal, and without having paid to the City of Hannibal the said license tax of $25.00, contrary to the form of said ordinance.
[3] At the trial in the Court of Common Pleas defendant admitted in open court that he did operate an automobile repair shop in the City of Hannibal at the times charged in the information, and that he had not prior to said time nor at any time during said period obtained a license for the operation of said repair shop, and that he did not at any time pay to the City of Hannibal a license tax for the operation of said business.
[4] The City offered in evidence, in addition to the admissions made by defendant, its General Ordinance No. 26 as amended. Defendant objected to the introduction of said ordinance on the ground that it was not in conformity with state law; that it was not authorized by the State Legislature, and that the ordinance was void because it was not authorized by the Legislature nor by the Constitution. Defendant's objection was overruled and the ordinance was introduced in evidence. The parts of said ordinance with which we are concerned are as follows:
[5] "Section 1. All of the various objects, subjects, trades, vocations and occupations within the City of Hannibal, herein mentioned, shall be licensed, taxed and regulated as hereinafter provided.
* * * * * *
[6] "Unlawful to do Business Without a License; Charge Therefor
[7] "Section 8. It shall be unlawful for any person, company, association or corporation to exercise, carry on or engage in any of the following occupations, professions, trades, businesses or agencies, in the City of Hannibal, without a license therefor from said city, and the charge for such license shall be respectively as follows, to-wit:
* * * * * *
[8] "136. (Sub-paragraph) Automobile Repair Shops. $25.00 per annum."
[9] With the introduction of the ordinance in question and the admissions made by *Page 600 
defendant the City rested its case. The defendant then requested the court to rule that the City had failed to make any case and had failed to show the violation of any rule or ordinance. Defendant's request was overruled by the court. Defendant then testified that he was 57 years of age; that he lived in Hannibal, Missouri, and operated an automobile repair shop at 2219 Market Street in that city and had operated such shop for thirty years; that about one-third of his work was tractor work for farmers; that the rest of his work was repairing automobiles and tractors; that he did not sell or get paid for anything except his manual labor as a mechanic; that he had nothing for sale and that the only things he had upon his premises belonging to him were the tools of his trade as a mechanic; that he had no machine tools; that he had no lathe; that his tools were "Hand tools and wrenches and the like of that"; that he did have electric drills; that in January 1948 he received a statement from the City Clerk of Hannibal which was introduced as Defendant's Exhibit No. 1. It is as follows:
"Statement
 To the City of Hannibal, Missouri, Dr. Hannibal, Mo., Jan. 1, 1948
 Henry C. Minor 2219 Market City Merchants License Auto repair shop Jan. 1, 1948 to July 1, 1948 $12.50 All license must be paid by Jan. 31, 1948."
[10] Defendant further testified that he did all of his own work in repairing automobiles and tractors; that he did not buy or sell anything, not even new or used parts required in his repair work; that his customers would get any parts needed or that he would procure them and give the bill for them to his customers and the customers would pay the bill for such parts; that he received no commissions or profits on any of such parts used in repairing automobiles and tractors at his shop.
[11] Defendant further testified that his Exhibit No. 1, the "Statement" showing that he owed the City $12.50 for a "Merchant's License" was the only notice of any kind that he had ever received from the City of Hannibal until he was arrested on the charge herein. In answer to a question on cross-examination as to whether or not he had at any time since the 1st of January, 1948, a license of any character on his place of business, defendant answered:
[12] "A. Due to the fact I didn't think it was necessary to work at my trade, no, sir.
[13] "Q. Your final answer is no, sir? A. That is right, I don't need it to work at my trade."
[14] The following which occurred on redirect examination of defendant shows clearly the exact points of dispute between the parties and the rulings of the court thereon.
[15] "Q. Now, Henry, the gentleman has gone into something about a machine shop, what is a machine shop?
[16] "By Mr. Ely: We object to that, your Honor, That is a matter of law for the Court. We object to the witness saying what a machine shop is or isn't.
[17] "By the Court: Sustained.
[18] "By Mr. Hamlin: On what ground?
[19] "By the Court: It calls for a conclusion of the witness.
[20] "By Mr. Hamlin: I asked if he knows, and if so, to describe it.
[21] "By Mr. Ely: It is a matter of law for your Honor.
[22] "By the Court: Objection sustained.
[23] "By Mr. Hamlin: We now make proffert and offer to prove, if permitted by the Court, that this witness would describe what a machine shop is, and explain and show to the Court the difference between a machine shop, as known in the trade and in this vicinity, from an automobile repair shop, if permitted by the Court.
[24] "By the Court: He may state what he does in his place of business.
[25] "By Mr. Hamlin: Let me ask the gentlemen for the City, are you contending and are you now changing from a repair shop to a machine shop?
[26] "By Mr. Ely: We are contending that a machine shop is a repair shop, and is the same identical thing under a different name. *Page 601 
[27] "By Mr. Hamlin: In view of that fact, I think we have a right to go into it and show the difference. They have never taken that position until today.
[28] "By the Court: Objection sustained.
[29] "By Mr. Hamlin: Your Honor rules we can't show what a machine shop is as differentiating itself from a repair shop?
[30] "By the Court: That would be permitting him to testify as to whether he is guilty or not guilty, as to whether he has violated the law or not. Objection sustained."
[31] Further offers by counsel for defendant to have the defendant testify as to what constituted the machinery or equipment of a machine shop were overruled by the court, after which the following occurred:
[32] "By Mr. Hamlin: Mr. Ely did not charge this man with operating a machine shop, only an automobile repair shop is what he is charged with.
[33] "By Mr. Ely: That is right, on the theory that is one specie of a machine shop."
[34] Defendant's counsel then made an offer of proof to show by the witness that a machine shop is a place where power driven lathes, presses, drills and other power driven equipment are used practically entirely, and that to so equip a machine shop would mean an investment of $20,000 to $25,000 in the Hannibal community, and that the work and service done in a machine shop is not the same as work and service done in an automobile repair shop. The offer of proof was denied by the court.
[35] Defendant contends that the court erred in finding him guilty and argues that the general ordinance under which he was convicted was and is invalid and void for the reason that such ordinance was not authorized by Section 7451, R.S.Mo. 1939, Mo. R.S.A. § 7451. The statute really involved in this controversy is Section 7451, Laws Mo. 1943, page 706, although counsel for the City of Hannibal refer to it as Section 7451a, Laws Mo. 1941, page 453, and counsel for defendant refers to it as Section 7451, R.S.Mo. 1939. A reference to page 706 Laws of Mo. 1943 shows that Section 7451, R.S.Mo. 1939, and Section 7451a of the Laws of Missouri, 1941, page 453, were repealed and a new section in lieu thereof relating to the same subject matter to be known as Section 7451 was enacted. We refer to these different enactments merely to keep the record straight, and to show that our decision herein is based upon the statute actually in force at the time of the alleged offense, namely, Section 7451, Laws Mo. 1943, page 706. There is no difference between the statute in Laws of Mo. 1941, page 453 and the statute in Laws of Mo. 1943, page 706 insofar as the subject matter of this suit is concerned. Both such statutes included the words "machine shops" and neither included the words "automobile repair shop."
[36] Section 7451, Laws Mo. 1943, page 706, provides that the Council of any incorporated town or city in this state having a special charter and which now contains or may hereafter contain not more than 30,000 inhabitants shall have power and authority by ordinance to levy and collect a license tax on a large number of separately specified occupations, trades, objects and subjects including "machine shops." The statute is very lengthy and it is not necessary to set it forth here. No question is raised by either party as to the City of Hannibal being subject to the provisions thereof.
[37] The question to be decided in this case is whether or not Section 7451, Laws Mo. 1943, page 706, gave the City of Hannibal power to pass an ordinance requiring a mechanic operating an "automobile repair shop" to obtain a city license therefor and to pay a license tax. The City of Hannibal admits that the specific type of business enterprise known as an "automobile repair shop" is not named in the statute, Section 7451, supra, but contends that said statute does confer taxing power upon the City with respect to a general genus of business enterprise described in said statute as "machine shops." From that viewpoint the City argues than an "automobile repair shop" is a species belonging to the genus "machine shop" and that the power of the City to regulate and tax "machine shops" necessarily involves the power to regulate and tax an "automobile repair shop" which the City asserts is merely one kind of machine shop. *Page 602 
[38] Section 7440, R.S.Mo. 1939, Mo.R.S.A. § 7440, provides: "No municipal corporation in this state shall have the power to impose a license tax upon any business avocation, pursuit or calling, unless such business avocation, pursuit or calling isspecially named as taxable in the charter of such municipalcorporation, or unless such power be conferred by statute."
(Emphasis ours.)
[39] We are of the opinion that the statute, Section 7440, supra, was intended by the Legislature to make it clear, definite and certain that the license taxing power should be used by municipalities only in relation to objects and subjects "specially named" by state law. In the face of the positive, clear and unambiguous language used by the Legislature in said Section 7440, there is no place for strained, involved and forced construction of the words "automobile repair shop" in the city ordinance to make such words mean "machine shop," as the City contends they mean. Quite aside from the difference in the natural meanings of the two phrases as used in their ordinary sense, which alone forbids their acceptance as being interchangeable, the construction contended for by the City, if adopted, would be in utter defiance of Section 7440, supra, which the Legislature took special pains to enact in order to confine municipalities within the lawful powers given to them by the State.
[40] In the case at bar the city ordinance concededly named a subject for license taxation not contained in Section 7451, supra, the statute authorizing such taxation. The city ordinance used the words "automobile repair shop," whereas the state statute used the words "machine shops." The City relies on the statute using the words "machine shops" but it did not charge the defendant with operating a "machine shop," because its ordinance did not name "machine shop." Notwithstanding this position of the City, it objected to the evidence sought to be introduced by defendant to show the court what constitutes a "machine shop." It also objected to the offer of evidence by defendant to show the difference between a "machine shop" and an "automobile repair shop." The City is, therefore, in the position of seeking to convict the defendant on a charge of operating an "automobile repair shop" by claiming that he was operating a "machine shop" in order to bring its prosecution within the state law. This appears to have been a belated recognition by the City of the supremacy of the state law.
[41] We are unable to agree with the City's contention that an automobile repair shop and a machine shop are one and the same thing, or that the former is a mere species of the latter. If the Legislature had desired to authorize a city to tax an "automobile repair shop" it, no doubt, would have said so in simple, plain language. It did not say so. We believe that the words "machine shop" should be taken in their ordinarily accepted sense. The words are not technical; they are merely descriptive of what the Legislature had in mind. Webster's International Dictionary, Second Edition, defines them as follows: "Machine shop. A workshop in which work is machined to size and assembled." An automobile could without question be repaired by the use of hand tools in a garage of a home or in a place in which there is no machinery whatsoever, yet it would not be reasonable to say that such home garage or place was a "machine shop." It cannot reasonably be said that a shop is a "machine shop" in which there is no machinery whatsoever, where no work is "machined" and all work is done by hand tools.
[42] The City in its argument divides the term "machine shop" into two parts and then proceeds to discuss the single word "machine." The error in such argument is that the Legislature did not use the single word "machine." It used the phrase "machine shops." In such argument the City reaches the conclusion that an automobile is a "machine." It is then argued that an automobile being a "machine," therefore, the place in which it is repaired is a "machine shop." We cannot agree with such argument. To determine whether an "automobile repair shop" is a "machine shop" we must know the kind of *Page 603 
"repairs" the shop is equipped to do and usually carries on. If the repairs under consideration require the use of lathes or other kinds of machinery, or machine tools for processing or operating on metals, then the shop in which such work is done is generally understood by the average person to be a machine shop. On the other hand, if the repairs are such that no process of machinery is necessary and the shop is not equipped with any such machine tools and uses only hand tools, it cannot be said, certainly not as a matter of law, that it is a "machine shop." An automobile can be "repaired" on a parking lot or on the street or highway by the use of hand tools, but it could not reasonably be said that any such place would thereby become a "machine shop." We think it is clear that an automobile repair shop is not necessarily a machine shop. Whether or not a particular shop is a "machine shop" is a question of fact to be determined by evidence, where that question is in issue.
[43] We believe that the argument of the City herein is not in accord with the ordinarily accepted meaning of the words "machine shop" such as given in Webster's Dictionary, supra. Furthermore, the strained argument of the City to enable it to reach the conclusion it seeks is not in accord with the rules of statutory construction by which we must be guided in determining such matters. We do not believe the Legislature ever intended to permit a person to be prosecuted for an offense which might or could result in deprivation of liberty (a jail sentence) by means of a strained and forced construction of unauthorized words used in a city ordinance. Section 7440, supra, strongly and clearly shows a contrary intention on the part of the lawmakers. The Legislature itself has provided for our guidance certain rules of construction and we see no reason to depart from such rules in order to sustain a conviction which the City admits is not based upon any statutory language. Section 655, R.S.Mo. 1939, Mo.R.S.A. § 655, provides that "The construction of all statutes of this state shall be by the following additional rules, unless such construction be plainly repugnant to the intent of the legislature, or of the context of the same statute: First, words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import; * * *." The words "machine shops" used in the statute, Section 7451, supra, upon which the City relies for its authority are simple, plain and ordinary words and should be construed in accordance with Section 655, supra, "in their plain or ordinary and usual sense." If the City desired to levy a license tax upon "machine shops" it should have used the words "machine shops" in its ordinance. It should not have adopted an ordinance taxing "automobile repair shops," without clear charter or statutory authority therefor.
[44] While it is true this case involves a mere license tax, it also involves the liberty of a citizen and is, therefore, quasi criminal in its nature. The Supreme Court has ruled that an ordinance of a city "must be clear, certain and definite so that the average person may, upon reading it, understand whether he will incur a penalty for his action." City of Washington v. Washington Oil Co., 346 Mo. 1183, 1186, 145 S.W.2d 366, 367.
[45] In Ex parte Taft, 284 Mo. 531, 544, 225 S.W. 457, 461, our Supreme Court said: "Statutes and ordinances which fix crimes, or quasi crimes, should so fix them that there could be no uncertainty. They should be so worded that one could read them, and know whether or not he was violating law. They should not be so worded as to leave their substantive elements to the caprices of either judge or jury. In other words the law should be complete and definite."
[46] A number of other cases involving the power of municipalities to enact ordinances levying taxes upon various kinds of occupations and businesses have been decided by our Supreme Court. In a leading case an architect in Kansas City, Missouri, was convicted on a charge of violating a city ordinance which imposed a license tax on architects. He refused to pay the fine imposed and was committed to jail, whereupon *Page 604 
he filed a petition for a writ of habeas corpus in the Supreme Court, which the court granted. In discharging the prisoner from custody the Supreme Court en banc based its decision upon the statute, now Section 7440, R.S.Mo. 1939, supra, which we have set forth herein. The court said: "A city has no inherent power to tax. This power rests primarily in the state and may be delegated by constitutional provision or by statutory enactment. Theauthority to tax must be expressly granted or necessarilyincident to the powers conferred, and in case of doubt the poweris denied." Siemens v. Shreeve, 317 Mo. 736, 740, 296 S.W. 415, 416. (Emphasis ours.)
[47] Another case in which the Supreme Court based its decision squarely upon the statute, Section 7440, R.S.Mo. 1939, supra, was Moots v. City of Trenton, Mo.Sup., 214 S.W.2d 31. That was an action by Moots to enjoin the defendant City from prosecuting him for violation of a city ordinance, the charge against Moots being that he had five coin operated music machines at different places in the city without procuring a license. The trial court granted an injunction against the City and the City appealed. In affirming the judgment of the trial court the court quoted with approval from the case of Siemens v. Shreeve, supra, holding that a city has no inherent power to tax; that its authority to tax must be expressly granted or necessarily incident to the power conferred and that in case of doubt the power to tax is denied.
[48] We have carefully considered the cases cited by the City and have reached the conclusion that they do not support the City's contention. It is true that in City of St. Charles v. St. Charles Gas Co., 353 Mo. 996, 185 S.W.2d 797, cited by the City herein, the Supreme Court did hold that an occupation which "clearly" comes within the definition of subjects enumerated in a municipal charter or statute as subject to a license tax or is a species of one of the occupations named therein may be subjected to a tax by a municipality. It will be noted, however, in that very case that although the general principle with respect to "genus" and "species" was stated, the court nevertheless affirmed the judgment of the lower court holding that the defendant therein was not subject to the tax and that a "gas company" was not necessarily a species of a "light company" and that the occupation sought to be subjected by the city ordinance to the license tax not being "specially named" as taxable in the charter of the City, it had no authority to subject the defendant company to the tax provided by its ordinance.
[49] The case of Ex parte Lockhart, 350 Mo. 1220, 171 S.W.2d 660, 663, also cited by the City herein, involved facts very different from those in the case at bar. In upholding the power of the City to pass the ordinance in question involving a license tax upon the business of a public mover, the court pointed out specifically that its charter gave the City the right to impose occupation taxes on the business of transporting freight for hire and that it had the right to measure such taxes by the number of motor vehicles engaged in such transportation. The Court said: "This is exactly what Ordinance No. 42217 provides." We do not believe that this Ex parte Lockhart case or any of the other cases cited by the City would authorize us to hold as a matter of law that an "automobile repair shop" is a "machine shop."
[50] The City's information in the case at bar charged the defendant with operating an "automobile repair shop" and when the defendant came into court and frankly admitted he was operating that kind of shop he was confronted by the City with a highly involved argument that he was operating a "machine shop." Can it be reasonably said that the average person being charged with operating an "automobile repair shop" would know and understand therefrom that the City would rely upon a statute naming "machine shops"? We believe not. On the contrary, we believe that the prosecution herein was not in accord with the rules laid down by our Supreme Court in the cases cited, supra.
[51] In its brief herein the City says: "While we freely admit that the city may not lawfully regulate or tax any kind of business enterprise unless the power so to do has been expressly conferred upon it by statute, *Page 605 
we contend that Section 7451a, supra, lists and enumerates a large number of classes or genera of business enterprises over which the city is given the power of taxation and regulation." It appears from the above-quoted argument of the City that it regards its argumentative contention as sufficient to overcome the plain, clear, positive and unambiguous language of the statute, Section 7440, supra. While the City admits that it may not lawfully regulate or tax any business unless the power to do so has been "expressly" conferred, it renders its own admission nugatory by claiming the right to go beyond the express authority granted to it by the statute. The City's contention, therefore, is inconsistent with its admission. The City's position at the trial also was inconsistent in claiming that the defendant was operating a "machine shop" but refusing to let defendant present evidence to show that it was not a "machine shop" he was operating.
[52] Furthermore, we do not agree with the City's view that the question of what constituted a "machine shop" is a question of law. Defendant did not admit that he was operating a "machine shop." He strenuously denied that claim and argument of the City. Furthermore, the information did not charge that defendant was operating a "machine shop."
[53] If the City's ordinance had used the phrase "machine shop" and the information had been based thereon and the defendant had admitted such charge, then there would have been a question of law presented justifying a conviction for that would have amounted to a plea of guilty. But that was not the situation involved herein.
[54] The question of whether or not an "automobile repair shop" is a "machine shop" was, on this record, a question of fact for the trier of the facts. If the City's ordinance had been a valid one levying a tax on "machine shops" as authorized by state law and defendant had been charged with violation thereof, then the burden would have been on the City, claiming as it did that defendant was operating a "machine shop," to prove by evidence that it was a "machine shop." Section 7363, R.S.Mo. 1939, Mo.R.S.A. § 7363, which is applicable to all cities and towns in this state provides that appeals from police courts for violation of an ordinance of a city, town or village shall be in the nature of a criminal appeal from a Justice of the Peace Court. This statute has been construed to mean that in case of an appeal from a judgment of a Police Court to the court having criminal jurisdiction, the defendant in a trial de novo in such appellate court is entitled to the presumption of innocence and can be convicted only on proof of guilt beyond a reasonable doubt. King City v. Duncan, 238 Mo. 513, 142 S.W. 246. See also Town of Glenwood v. Roberts, 59 Mo.App. 167, City of St. Louis v. Stubley, Mo.App., 154 S.W.2d 407 and City of Clayton v. Nemours, 237 Mo.App. 167, 164 S.W.2d 935. In the case at bar the City not only did not prove that defendant operated a "machine shop" it actually prevented defendant from producing evidence which would show the difference between a "machine shop" and an "automobile repair shop."
[55] A careful reading of the statute itself, Section 7451, supra, shows that the Legislature gave to the municipalities named therein authority to tax a large number of occupations and callings and "specially named" them separately. Among those named was "auto wrecking shops." When we consider that the Legislature specially named "machine shops" and "auto wrecking shops" but did not mention "automobile repair shops," the intention to exclude the last mentioned becomes clear. There is a fundamental principle of construction which has been recognized and applied from time immemorial by our courts to such questions as we have here. It is embodied in the maxim: "Expressio unius est exclusio alterius" which means that the express mention of one thing, person or place implies the exclusion of another. The application of this principle to the question before us merely serves to emphasize the fact that the City in this case was without authority to include in its ordinance "automobile repair shops."
[56] On the entire record, it is our view that the defendant was improperly convicted because the ordinance which constituted the *Page 606 
foundation of the prosecution was invalid and void insofar as it named an "automobile repair shop" as a subject of taxation, there being no authority in state law to authorize such tax. The judgment of the Hannibal Court of Common Pleas is, therefore, reversed and the defendant discharged.
[57] ANDERSON, P. J., and HUGHES, J., concur.