**William BRACKETT et al., Appellants (Plaintiffs),**

v.

**EASTON BOOT AND SHOE COMPANY et al., Respondents (Defendants).**

No. 50332.

Supreme Court of Missouri, Division No. 2.

March 8, 1965.

Motion for Rehearing or to Transfer to Court En Banc Denied April 12, 1965.

Paul J. Simon, Floyd McBride, Thomas F. McGuire, St. Louis, for appellants.

William M. Howard, Thomas C. Walsh, St. Louis, Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel, for respondents.

FINCH, Judge.

This is a class action in which alleged rights to pro rata accrued vacation pay, pay for a holiday, and other asserted rights are sought. The trial court entered judgment for defendants. A timely motion for new trial was filed and overruled, and the appeal came to this court on the basis that plaintiffs sought recovery in excess of $15,000 in accrued vacation and holiday pay.

The plaintiffs are six individuals who sue on behalf of themselves and others similarly situated. Three of the plaintiffs are officers and representatives of Local No. 7 of the United Shoe Workers of America AFL-CIO (hereinafter referred to as Local No. 7) and the other three are members of Local No. 7 and were employees of Easton Boot and Shoe Company (hereinafter referred to as Easton). One of the officers of Local No. 7 was also an employee. The other two did not testify and the record does not indicate whether or not they also were employees of Easton.

The suit was against Easton and Hamilton Shoe Company (hereinafter referred to as Hamilton). The petition sought a declaratory judgment that defendant companies had certain contractual obligations under a collective bargaining agreement to provide employment or reemployment, that they should be held to owe certain monetary amounts for vacation and holiday

pay to each plaintiff and those similarly situated, and that they should be held liable for compensatory damages to Local No. 7 as lost union dues and other damages. At the conclusion of all the evidence the court found against the plaintiffs and entered judgment in favor of both defendants.

■ Plaintiffs brief and argue only two points for reversal of the judgment, to wit: (1) Plaintiffs and those similarly situated were entitled to judgment for accumulated vacation pay on a pro rata basis for a period from April 1, 1961, to August 31, 1961, the date of liquidation of Easton; and (2) Plaintiffs and those similarly situated were entitled to holiday pay for Labor Day, 1961. The other issues in the trial below and which have not been briefed are waived. Ayres v. Keith, Mo., 355 S.W.2d 914, 919. In this opinion we shall relate only the evidence which relates to the two points briefed and which is necessary to a determination thereof.

Defendant Easton was a corporation engaged in manufacturing shoes in the City of St. Louis. Local No. 7 was a labor union and was the duly certified bargaining agent for production employees of defendant Easton. A written labor agreement between Easton and Local No. 7 dated March 25, 1959, covered a period from December 15, 1959, through December 31, 1960, and a written supplemental agreement was executed extending the agreement for a period expiring December 31, 1962.

Easton was a wholly owned subsidiary corporation of Hamilton, which also manufactured shoes in St. Louis. Easton manufactured a particular type of shoe and did so under contract exclusively for Hamilton, as did another wholly owned subsidiary of Hamilton at De Soto, Missouri. For a time Easton operated on a profitable basis but in 1960 and 1961 the demand for shoes of the type manufactured by Easton declined sharply and Easton suffered substantial losses. The decision was reached that the operation of one of the three companies would be discontinued. For reasons not material to this decision, it was concluded that the De Soto plant would not be closed. Discussions followed as to whether the Easton plant should be closed and its operations moved into the Hamilton plant, or vice versa. Each company had a different union and discussions were conducted with representatives of both unions. On August 29, 1961, after these discussions had been concluded, the decision was made that the operations of Easton would be terminated on August 31, 1961, and it would be liquidated and its assets transferred to Hamilton, which would assume its liabilities. Local No. 7 and employees of Easton were notified by letter and by notice on the bulletin board of this decision and employees were told that their employment terminated August 31, 1961. Under the arrangements any laid-off employees of Hamilton were entitled to recall, after which Easton employees could be employed as new employees by Hamilton. (Some were so employed later, but this phase of the arrangement is not material to a decision of this appeal.)

Subsequent to the shutdown of Easton on August 31, 1961, officers of the union and a committee of employees met with representatives of Easton and Hamilton asserting claims to reemployment rights, severance pay, pro rata vacation pay for the period from April 1, 1961, to August 31, 1961, and holiday pay for Labor Day, 1961. There also were certain contentions about some arbitrations of other matters. Company representatives disagreed and this suit followed.

The labor agreement contained an arbitration clause providing for arbitration of disputes upon written request of either party. Apparently representatives of Local No. 7 verbally discussed arbitration of these matters with company representatives, but the latter expressed disagreement therewith and it does not appear that any written request was made. Both

plaintiffs and defendants agree that the arbitration provisions of the contract are not involved.

The first point briefed and argued by appellants is that plaintiffs, and others similarly situated, were entitled to accumulated vacation pay on a pro rata basis for the period from April 1, 1961, until the date of liquidation of Easton on August 31, 1961, and that judgment should have been entered accordingly. Appellants' brief states that: " * * * the rights of the employees to vacation pay are to be measured by the provisions of the contract," but their brief does not discuss or analyze any of the various sections of Article XIV (the portion of the contract which dealt exclusively with vacations and vacation pay). Instead, appellants argue generally that collective bargaining contracts are to be construed with the liberality necessary to accomplish their evident purpose, that vacation pay is in effect additional wages or earnings, the right to which accrues as the employee works, and that if the employer terminates his employment before the date on which the employee would be entitled to the full vacation pay, he is entitled in right and justice to a pro rata portion of such vacation pay, calculated to the time of such termination.

The pertinent provisions of the labor agreement between Easton and Local No. 7 dealing with vacations were as follows:

## "ARTICLE XIV

### "VACATIONS

"*Section 1.* Subject to the conditions hereinafter set forth, which are conditions precedent, each employee of the EMPLOYER, represented by said UNION, who is paid on an hourly or piece work basis, shall be entitled to three weeks' vacation with pay in the year 1959 and in each succeeding calendar year, provided that each such employee:

"1. Has been in the continuous service of the EMPLOYER during the fifteen-year qualifying period, which shall consist of the continuous period from April 1, 1944, to March 31, 1959, both inclusive, with respect to the year 1959, and the fifteen year period ending March 31 of each succeeding year with respect to such succeeding years; and,

"2. Has actually performed all work required of such employee by the EMPLOYER during each of the twenty-six (26) different calendar weeks during the period from April 1, 1958, through March 31, 1959, with respect to the year 1959, and during the twelve month period ending March 31, of each succeeding year with respect to such succeeding year.

"*Section 2.* Subject to the conditions hereinafter set forth, which are conditions precedent, each employee of the EMPLOYER, represented by said UNION, who is unable to qualify under Section 1 hereinabove set forth, shall be entitled to vacation pay equal to six (6%) percent of his straight time earnings during the period from April 1, 1958, through March 31, 1959, with respect to the year 1959, and during the twelve month period ending March 31, of each succeeding year with respect to such succeeding year, provided that such employee:

"1. Has been in the continuous service of the EMPLOYER during the fifteen-year qualifying period, which shall consist of the continuous period from April 1, 1944, to March 31, 1959, both inclusive, with respect to the year 1959, and the fifteen year period ending March 31 of each succeeding year with respect to such succeeding year; and,

"2. Has actually performed all work required of such employee by

the EMPLOYER during each of the thirteen (13) different calendar weeks during the period from April 1, 1958, thru March 31, 1959, with respect to the year 1959, and during the twelve month period ending March 31 of each succeeding year with respect to such succeeding year.

(Sections 3 and 5 are the same as Section 1 except that they provide for periods of continuous service of five years and one year, respectively, and for vacations with pay of two weeks and one week, respectively. Sections 4 and 6 are the same as Section 2 except that they provide for periods of continuous service of five years and one year, respectively, and for vacation pay of 4% and 2%, respectively, instead of 6%.)

\* \* \* \* \* \*

"*Section 9.* Payments for vacation will be made by separate check at the time the vacation is taken. Vacation pay due under Sections 1, 3, and 5 hereinabove set forth will be computed for regular hourly workers at the rate in effect for each such eligible worker at the time payment is to be made, and a week's pay will be calculated at forty (40) times such straight time hourly rate of such worker. Vacation pay due under Sections 1, 3, and 5 hereinabove set forth will be computed for each eligible piece worker at his average straight time hourly rate during the quarter ending March 31, preceding the vacation period, and a week's pay will be calculated at forty (40) times such average straight time hourly rate for each such eligible piece worker.

\* \* \* \* \* \*

"*Section 12.* Any employee whose employment is terminated on or after June 1, 1958, or June 1, 1959, and on or before March 31 of the year following such respective June 1, who at the time of such termination of employ-

ment is entitled to receive a pension under the Pension Plan between the parties dated December 9, 1957, shall be entitled to such prorata vacation pay, if any, that he may be entitled to receive for the vacation year beginning the May 1 immediately prior to the termination of his employment by computing on an annualized basis both the qualifications necessary to determine whether such employee is entitled to vacation benefits and if so, the amount of vacation pay to which such employee is entitled. Such amount of vacation pay, if any, to which such employee shall be entitled shall be paid by the Company to such employee on or before the May 30 following the termination of his or her employment.

"*Section 13.* An employee who enters Military Service during the period from April 1, 1958 to March 31, 1959 or during any twelve month period thereafter, beginning with a succeeding April 1st while this Agreement is in effect, and who has fulfilled all of the requirements other than that of continuous service required in this ARTICLE, to be necessary to entitle such employee to vacation benefits hereunder, will be entitled to receive a cash payment to the extent of the vacation benefits to which he is so entitled, provided, however, that if such employee at the time he enters Military Service has fulfilled all such requirements as aforesaid except that he did not work the minimum number of hours required to earn vacation benefits but has worked at least two hundred (200) hours during the qualifying period, then such employee will be entitled to a cash payment equal to one-half of the vacation benefit he would have been entitled to receive if he had worked the minimum number of hours required to earn vacation benefits. Such payment will be made at the time of his induction into such Military Service.

"Upon return to the employment of the Company within ninety (90) days after such employee has left such Military Service, such employee who, during the period beginning the April 1st and ending the succeeding March 31st which includes the date that such employee returns to the employ of the EMPLOYER, fulfills all requirements for vacation benefits hereunder for such period except as to the hours required to be worked, but who remains in the continuous service of the Company for the remainder of the twelve (12) months qualifying period during which he returns to work and who works not less than two hundred (200) hours during such twelve (12) month's period, will be entitled to vacation pay benefits which such employee would have been entitled to receive had he worked the minimum numbers of hours required to have been worked by him under the provisions of this ARTICLE to receive vacation benefits."

■ The right to vacation pay is a contractual right and we look to the provisions of the contract which the parties have made. Sections 1, 3, and 5 of Article XIV provided for paid vacations of three weeks, two weeks, and one week, respectively, depending on the length of continuous service, plus performance of a certain minimum amount of work during the year. Section 2, 4, and 6 of Article XIV provided for vacation pay in certain instances where the employee met the requirement of continuous length of service but the amount of work performed during the year met a lesser minimum standard. In each and every one of these six sections the beginning line read: "Subject to the conditions hereinafter set forth, *which are conditions precedent * * *.*" (Italics ours.) Thereafter in subparagraph 1 of Section 1 the following condition precedent was specified: "Has been in the continuous service of the EMPLOYER during the fifteen-year qualifying period, which shall consist of the continuous period from April 1, 1944, to March 31, 1959, both inclusive, with respect to the year 1959, and the fifteen year period ending March 31 of each succeeding year with respect to such succeeding years." Similar language appeared in each of the Sections, 2 through 6, except for changes in Sections 3 and 4 from a fifteen-year period of continuous service to a five-year period, and in Sections 5 and 6 to a one-year period.

■ The language in these sections clearly and unequivocally provides that the employee must have been in the service of Easton for the entire applicable qualifying period through March 31 of the year in which the paid vacation is to be taken or the vacation pay is to be received. The sections all state that compliance with such requirement is a condition precedent to qualification by the employee. Appellants herein are bound by these contractual provisions. A collective bargaining agreement is subject to the same rules of interpretation as other contracts and is to be construed so as to accomplish its evident aims. Irwin v. St. Louis Globe-Democrat Publishing Company, Mo., 368 S.W.2d 452, 455; 56 C.J.S. Master and Servant § 28 (41) a.

■ It is obvious that Sections 1 through 6 of Article XIV do not provide expressly for either paid vacations or vacation pay on a pro rata basis. If provision therefor is to be found, it can only be by implication as a result of the construction of the language of the sections. In interpreting the contract we must be guided by the well-established rules that we cannot make contracts for the parties or insert provisions by judicial interpretation. We are to determine what the parties intended by what they said, and we cannot be concerned with what they might have said, or with what they perhaps should have said. Monterosso v. St. Louis Globe-Democrat Publishing Company, Mo., 368 S.W.2d 481, 487; Allen v. St. Louis Globe-Democrat Publishing Company, Mo., 368 S.W.2d 460, 467.

In determining the meaning of Sections 1 through 6 of Article XIV it is proper to look to any other clauses of the contract which might shed light on the intention of the parties. A cardinal rule of construction of a contract is that the court should look to the entire instrument and consider it as a whole. In re Collins' Trust Estate, 354 Mo. 614, 190 S.W.2d 259, 262. In so doing we observe that Section 12 of Article XIV provides that if an employee is entitled to a pension under the company pension plan, and his employment is terminated, he shall be entitled to pro rata vacation pay. This provision shows that the parties in their negotiations were aware of the subject of pro rata vacation pay and *specifically provided therefor in the situation where it was intended that the one terminated should receive pro rata vacation pay*. If, as appellants contend, vacation pay accrues as additional wages and an employee terminated is entitled to accrued pro rata vacation pay by reason of such accrual, there would have been no occasion for the drafters of the contract to insert Section 12 in Article XIV. Likewise, Section 13 of Article XIV provides for a modified pro rata vacation plan for persons entering military service. In this instance the pay was fixed arbitrarily at one-half of the vacation benefit, if the employee met certain minimum standards of work. The fact that they did include Sections 12 and 13 shows that the parties did not intend nor understand that the right to pro rata vacation pay would be implied in the absence of an express provision therefor. The express inclusion of those two instances implies the exclusion of all others. The maxim "expressio unius est exclusio alterius" is applicable. For all we know, the union may have requested pro rata vacation pay for all during the negotiations and the company may have contended for no pro rata vacation pay at all, and these provisions may have been a compromise. In any event, the presence of Sections 12 and 13 shows an intention to provide specifically for pro rata vacation pay where it was to be received.

This same conclusion is strengthened by Section 9 which provides that vacation pay under Sections 1, 3, and 5 shall be based on the average straight time rate of pay for the quarter ending March 31, preceding the vacation period. This shows that it was contemplated that the one entitled to vacation pay would have been working up to March 31st. If pro rata pay was intended for ones laid off earlier in the year (for example, August 31, as in this case), the amount of vacation pay would not and could not be calculated on the average straight time pay of that worker for the quarter ending March 31. The fact that it was to be computed on the basis of that quarter shows that pro rata pay was not intended.

Appellants' brief recognizes that there are two lines of authority on the question of how to consider the nature of vacation pay and how to treat a specified eligibility date in determining whether an employer is liable for pro rata vacation pay, where the employer in good faith discontinues its business. The case of Livestock Feeds, Inc. v. Local Union No. 1634 of Congress of Industrial Workers, 221 Miss. 492, 73 So.2d 128, cited by appellants, supports their views. In spite of a vacation clause which seems to provide for determination of vacation status as of June 1, the Supreme Court of Mississippi held that if the employment was terminated earlier by the employer, the employee was entitled to a pro rata share of the vacation pay. This conclusion was based on the view that the vacation pay constitutes additional wages and accrues as the employee works during the year. The other line of cases is represented by the case of Treloar v. Steggeman, 333 Mich. 166, 52 N.W.2d 647. In that case the business was operating at a loss and the company shut down in September, which was before the date specified as the qualification date for vacations. Employees sought pro rata vacation pay which was denied. In so holding the court stated (52 N.W.2d 647, 649):

849

"Plaintiff claims that the agreement should be liberally construed in his favor. The agreement clearly prescribes a condition precedent to vacation pay that the employee shall be on the seniority list on December 1, 1947, as well as having completed at least 6 months work since December 1, 1946. The two conditions precedent are clearly stated and there is no doubtful meaning to be resolved in plaintiff's favor. We must apply the clear provisions of the agreement as we find them. It was competent for the parties to fix and agree upon December 1, 1947 as the eligibility date and it is not for the court to advance the eligibility date to suit the convenience or wishes of one party to the agreement. It is not for us to review or redetermine the considerations that led to the fixing of the date as December 1, 1947.

"Plaintiff and his assigns have failed to qualify under the requirements of the agreement and are not entitled to vacation pay."

It would serve no useful purpose to review the various other cases cited. These two cases represent the respective viewpoints.

█ This precise question has not been decided previously by the appellate courts in Missouri. In Monterosso v. St. Louis Globe-Democrat Publishing Company, Mo., 368 S.W.2d 481, 488, this court did hold that unpaid vacation pay under a collective bargaining agreement did not constitute unpaid wages within the meaning of Section 290.110, RSMo 1959, V.A.M.S. It is true that said section is a penal section and the test would not necessarily be the same for the purpose of determining the nature of vacation pay in construing this contract on the question of whether pro rata vacation pay was intended. Nevertheless, we have concluded that vacation pay does not constitute unpaid wages for the purpose of establishing a right to pro rata vacation pay in this case. We have pointed out that the contractual provisions specify continuous

employment to a specific date as a condition precedent. Other clauses make provision for pro rata vacation pay in specific limited situations only. Vacation pay is not even mentioned in the Article on Wages in the collective bargaining contract. Paid vacation and vacation pay are covered in a separate article and are payable by a separate check. Such vacation pay is not taken into account as a part of wages for the purpose of computing overtime or holiday pay. All of these things lead us to the conclusion that the contract did not provide for pro rata vacation pay in the situation here presented, either expressly or by reasonable interpretation.

The second point briefed and argued by appellants is that plaintiffs and others similarly situated were entitled to holiday pay for Labor Day, 1961. Article XIII provided for certain paid holidays and provided in part as follows:

"*Subject to the conditions hereinafter provided*, all employees covered hereunder shall receive eight (8) hours' pay at their respective regular straight time hourly rate for * * * Labor Day * * * *and in order to be eligible for such pay employees must meet the following requirements*:

"(a) They must have been in the continuous employ of the EMPLOYER at least thirty (30) days prior to the holiday; and

"(b) They must have actually worked both the last scheduled work day of the employee before such holiday *and* the first scheduled work day of the employee after such holiday * * *.

* * * * * *

"(d) The scheduled work day of the employee as used herein is the work day designed by the EMPLOYER before and after such holiday and on which the employee is directed by the EMPLOYER to appear and on which work

day the employee works the hours required by the EMPLOYER. * *" (Italics ours.)

■ It will be noted that said Article made it a condition that the employee work the first scheduled work day after the holiday in question. In this instance, the last scheduled work day was August 31, 1961. That was the day on which the company closed down. Labor Day followed, and there was no scheduled work day after Labor Day. Appellants contend that holiday pay really is compensation or wages and that the company cannot escape liability therefor by liquidating the company with the result that there is no scheduled work day after the holiday in question. It follows from what we have said in denying pro rata vacation pay that the appellants are not entitled to recover for holiday pay. The contract made it a condition precedent that the employee work the first scheduled work day after a holiday to be entitled to pay for that holiday. This condition precedent was not met. The company cannot be held liable therefor on account of not having provided for a scheduled work day after a holiday any more than it is liable for vacation pay on account of not having provided employees an opportunity to work until the vacation eligibility date had arrived.

Respondents assert that appellants did not plead or prove facts necessary to sustain a class action under Rules 52.08 and 52.09, V.A.M.R. In view of our disposition of the points raised on appeal by appellants, it is unnecessary for us to decide this question. The requirements of those rules relative to class actions have been discussed at some length in various cases and should make clear what will be required. Bellerive Country Club v. McVey, 365 Mo. 477, 284 S.W.2d 492; Campbell v. Webb, 363 Mo. 1192, 258 S.W.2d 595; Sheets v. Thomann, Mo.App., 336 S.W.2d 701; Milton Construction & Supply Co. v. Metropolitan St. Louis Sewer District, Mo.App., 308 S.W.2d

769; City of St. Ann v. Buschard, Mo.App., 299 S.W.2d 546, and Hribernik v. Reorganized School District R–3, Mo.App., 276 S.W.2d 596.

The judgment is affirmed.

All of the Judges concur.