Frances MORRIS, Plaintiff-Respondent,

v.

Lance S. GRANGER, Judith K. Granger,
Donald E. Smead and Susan C.
Smead, Defendants-Appellants.

No. 13096.

Missouri Court of Appeals,
Southern District.

July 16, 1984.

Bruce K. Kirby, Jones, Keeter, Karchmer, Nelms, Sullivan & Kirby, Springfield, for defendants-appellants.

William A.R. Dalton, Daniel, Clampett, Rittershouse, Dalton, Powell & Cunningham, Springfield, for plaintiff-respondent.

MAUS, Judge.

In this declaratory judgment action the parties seek the construction of an installment note secured by a deed of trust. The printed portion of the note was in usual form, including a provision providing for acceleration in the event of default in the payment of any installment. In addition, there was typed on the face of the note the following phrase: "This note non-transferrable without written consent." The plaintiff, holder of the note, contends this is a "due on sale" clause providing for acceleration of the note upon the sale of the real property securing the note. The trial court so declared. One of the makers and the vendees of the real property appeal.

It must be noted, the parol evidence rule, *State Bank of Fisk v. Omega Electronics*, 634 S.W.2d 234 (Mo.App.1982), has not been interposed as a bar to the reception or consideration of evidence to expand the meaning of the quoted phrase. Rather, the parties have introduced evidence of statements and understandings as bearing on the construction of that phrase. They urge the resolution of that issue on that basis. It will be so considered by this court. However, this opinion should not be construed as necessarily determining the parol evidence rule could not be held applicable. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261 (Mo. banc 1973).

The following is a summary of the evidence. The plaintiff listed her home in Springfield for sale. Through a realtor, the Grangers submitted a written offer to purchase contingent on the sale of their home in Kansas City. The plaintiff, acting through her son, by a telephone conversation, rejected that offer. Alternate terms were negotiated during that long distance conversation between the son and the husband, Lance Granger. As a result of this conversation, a new contract was prepared by the son's office. This contract was signed by the plaintiff and the Grangers. This contract provided for a sale with the plaintiff to carry a substantial part of the purchase price evidenced by a promissory note. The note was to be payable in monthly installments with the unpaid balance due in 25 years. It was to be secured by a deed of trust on the property. The contract also provided: "Seller reserves right to approve any transfer of loan that might occur." Husband Granger recalled no mention of that subject during the telephone negotiations. When he read that provision he determined to ask its meaning at the time of closing. The realtor, who heard the son's end of those negotiations, recalled no conversation on the subject. The son testified the contract phrase was consistent with the negotiations.

Approximately twelve weeks later, the transaction was closed in the son's office. The son had been in the real estate business thirty years. The closing warranty deed, note and deed of trust were prepared at his direction by his experienced assistant. Husband Granger testified he asked

the meaning of the typed phrase. He said, the son replied it meant the seller would want to approve someone else being on the note. The son testified Granger asked no question about the phrase. The seller testified to the same effect. The realtor remembered the question and testified Granger was told it was to be sure the loan was secure.

Approximately three years later, husband Granger proposed to sell the home to defendants Smead. The same realtor, on behalf of Granger, contacted the seller to see if the defendants Smead could assume the loan. She was told no. Granger and the defendants Smead then entered into a contract for sale. In general, under that contract the defendants Smead were to make monthly payments to Granger, who was to make monthly payments to the seller according to the terms of the disputed note. A deed was placed in escrow. Granger continued to be liable on that note. The plaintiff, contending the disputed phrase was a "due on sale clause", alleged that contract was a violation thereof and declared the balance of the note to be due.

▉ Even considering that phrase to be ambiguous to be construed in the light of this evidence, its meaning must be determined within the limitations of well defined legal principles. These principles include a fundamental precept applicable to contracts in general this court must follow in construing the note. That is, in interpreting contracts, courts must be guided by the well established rule that they cannot make contracts for the parties or insert provisions by judicial construction, and they are to determine what the parties intended by what they said and not by what they might have said or what perhaps they should have said. *L & K Realty Co. v. R.W. Farmer Const. Co.*, 633 S.W.2d 274 (Mo. App.1982); *Johnston v. First Nat. Bank & Trust Co., Etc.*, 624 S.W.2d 500 (Mo.App. 1981); *Ennis v. McLaggan*, 608 S.W.2d 557 (Mo.App.1980).

It is generally considered that the acceleration of the maturity of an installment note is a harsh remedy. *Joy Corp. v. Nob*

*Hill North Properties, Ltd.*, 543 S.W.2d 691 (Tex.Civ.App.1976). Requirements for the language of an acceleration clause have received the following expressions. "Moreover, to be effective, acceleration clauses in notes should be clear and unequivocal, and where there is a reasonable doubt as to the meaning of the terms employed, preference should be given to that construction which will avoid forfeiture and prevent acceleration of maturity." *Purnell v. Follett*, 555 S.W.2d 761, 764 (Tex.Civ.App.1977). "A right to accelerate, in order to be effective, should be clear and unequivocal, and if there is a reasonable doubt as to the meaning of the terms employed preference should be given to the construction which will avoid the forfeiture and prevent acceleration of maturity." *Weber v. Swenson*, 207 Neb. 35, 295 N.W.2d 688, 693 (1980). However, the requirements are not always said to be so stringent. Annot., Acceleration Clause—Transfer of Property, 69 A.L. R.3d 713 (1976). This court has stated: "It may be noted here that *an express provision therefor* in the contract between the parties *is necessary to accelerate the maturity* of a bill or note." *McDown v. Wilson*, 426 S.W.2d 112, 119 (Mo.App.1968) (Emphasis added). Authorities to the same effect are collected in *Continental Fed. Sav. & Loan Ass'n v. Fetter*, 564 P.2d 1013 (Okl.1977).

The trial court construed the disputed phrase as a due on sale acceleration clause. In doing so, it concluded Granger realized his successors could not move in and assume the loan. In reaching this conclusion, emphasis was placed upon the realtor's inquiry if the defendants Smead could assume the loan. However, that conduct does not create an express provision for acceleration. It is consistent with any mortgagor wanting to be released from the liability on a note. According to the testimony of Granger and the realtor, this motive prompted that inquiry.

▉ The language of the note is contrary to the plaintiff's position. In the event of default in payment of any installment, there is clear and express provision

for acceleration. The prohibition against the transfer of the note, however that phrase be construed, is not accompanied by an express provision for acceleration. The familiar maxim expressio unius est exclusio alterius, which means that the express mention of one thing, person or place implies the exclusion of another, must bear heavily against any implication of such a provision. *State ex rel. Goldberg v. Barber & Sons Tobacco Co.*, 649 S.W.2d 859 (Mo. banc 1983); *City of Hannibal v. Minor*, 224 S.W.2d 598 (Mo.App.1949). This is particularly true as the note was drafted on behalf of the plaintiff by one long experienced in real estate loans and familiar with an express provision for acceleration. *Continental Fed. Sav. & Loan Ass'n v. Fetter*, supra; *John Deere Co. v. Hensley*, 527 S.W.2d 363 (Mo. banc 1975). When asked if he stated to Granger if he sold any interest in the land, the note would become accelerated, the son replied, "That isn't the way I stated it." He was then asked, "What you stated was that the loan was non-transferable?" and he answered, "On the sale of the property." This court has carefully reviewed the written and spoken language of the parties. Certainly the written language contains no due on sale acceleration provision. There is also a total absence of any evidence of a verbal express agreement or understanding providing for acceleration on sale.

Under *McDown v. Wilson*, supra, and the other authorities cited, this court must hold the plaintiff has not established a right to accelerate the maturity of the note because of the sale of the property. The judgment of the trial court is reversed. The cause is remanded for the entry of a judgment against the plaintiff and for the defendants upon the petition and counterclaim in accordance with this opinion.

HOGAN, PREWITT and CROW, JJ., recused.

GREENE, C.J., dissents and files opinion.

TITUS and FLANIGAN, JJ., concur.

GREENE, Chief Judge, dissenting.

In this court-tried case, the judgment, based on an eight-page memorandum containing findings of fact and conclusions of law, declares that plaintiff had a right to accelerate payment of the note in question.

The memorandum and ensuing judgment, attached hereto as Exhibits A and B, are based on substantial evidence, are not against the weight of the evidence, and do not contain any erroneous declarations or applications of law. This being so, the judgment of the trial court should be affirmed. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The majority opinion picks and chooses bits and pieces of evidence that were before the trial court, from which it forms its own opinions and conclusions different from those reached by the court below. To me, this constitutes usurpation of the trial court judicial function by the court of appeals, which practice should not be condoned.

Since the majority opinion is evidently based on a standard of review contrary to that mandated by *Murphy v. Carron*, supra, I certify that this appeal be transferred to the Missouri Supreme Court for their review. Rule 83.01, V.A.M.R.

EXHIBIT A

COURT'S MEMORANDUM

This memorandum is the Court's statement of the grounds for its decision. Rule 73.01(a)(2). In event of appellate review, the memorandum should be included in the legal file. Rule 81.12(a). Briefing was completed October 4, 1982, and the case has been under submission since that date.

The dispute arises from a phrase typed at the foot of a promissory note [1] executed March 21, 1978, by Lance S. Granger ("Lance") and his then-wife Judith.[2] The

---

1. P. Ex. 2.

2. At trial it was stipulated that the marriage of Lance and Judith was dissolved prior to March

phrase (referred to hereafter as "the typed phrase") is: "This note non-transferrable (sic) without written consent".

The principal issue in this suit is whether the typed phrase constitutes a "due on sale" clause. In ruling this issue the Court's consideration is not confined to the language in the note and its accompanying deed of trust. The Court has the benefit of evidence presented by the parties regarding their understanding of the typed phrase.

Defendants[3], in their brief, argue that the typed phrase is not ambiguous, and that it means *plaintiff* is prohibited from "transferring such note without prior consent".[4] Defendants contend there is, accordingly, nothing for the Court to construe.

The Court disagrees. The typed phrase contains no clue as to the meaning of the term "non-transferrable" (sic) and no hint about who must "consent". In the Court's view, the typed phrase is ambiguous, and must be judicially construed. In construing it, the Court must determine the intent of the parties, and in doing so the Court may consider subsidiary agreements between the parties and external circumstances which cast light on their intent. *Tri-State Gas Co., v. Kansas City Southern Railway Company*, 484 S.W.2d 252 (Mo. 1972).

Most of the evidence was uncontradicted, thus the Court need not lengthen this memorandum by reciting all of the undisputed facts. The Court will confine its attention to those areas where fact issues exist.

The first such area is the telephone conversation between James F. Morris ("Jim") and Lance which occurred January 9 or 10, 1978. Jim made the call after Maxine Sullivan ("Maxine") handed Jim a written offer[5] by Lance and Judith to purchase 1248 S. National ("the property"). The document was dated Sunday, January 8, 1978.

Three witnesses testified about the phone call: Jim, Lance and Maxine.[6] Jim testified he told Lance the loan was "non-transferable without Mother's approval". Maxine recalled no discussion about the loan being due in full if Lance and Judith sold the property. Lance testified he did not believe he and Jim discussed transfer of the loan during the call.

The second area of dispute is the "closing" on March 21, 1978. Jim testified Lance asked no questions.[7] Maxine testified Lance asked about the typed phrase. According to Maxine, Jim replied they "wanted to be sure the loan is secure". Maxine recalled no mention of accelerating the note if Lance and Judith sold the property. Lance testified he asked what the typed phrase meant, and Jim answered, "Mother would want to approve someone else's name being on the note". Lance recalled Jim saying it would require his mother's approval to put another name on the note. Vesta Brake and Peggy Morris also attended the closing. Neither recalled any discussion of the typed phrase.

Recognizing that the phone conversation and the closing occurred more than four years before trial[8], and that each incident was of routine nature, it is unlikely that

---

21, 1981, the date of Lance's contract with Donald E. Smead and Susan C. Smead (P. Ex. 4).

3. Plaintiff sued Lance, Judith, Donald E. Smead and Susan C. Smead. All except Judith appeared in person at trial, represented by attorney Bruce K. Kirby. Judith, through another attorney, filed a motion to dismiss on July 31, 1981, which was denied August 27, 1981. She filed no answer thereafter, but did, on May 19, 1982, file "Suggestions of Bankruptcy" alleging that all claims against her by plaintiff, Lance and the Smeads were discharged August 20, 1981. In this memorandum the Court uses the term "defendants" to refer to Lance and the Smeads, but not Judith.

4. Third paragraph, Part III, page 6, defendants' brief filed September 24, 1982.

5. D. Ex.A.

6. According to Maxine, she was in Jim's office and heard his end of the conversation.

7. Early in his testimony Jim said he did not attend the closing. Later, he testified his earlier testimony was incorrect.

8. Trial was held June 24, 1982.

anyone's recollection is totally accurate. The Court cannot comfortably accept any witness' version of either event. If the Court had to find exactly what was said, and by whom, on each occasion, in order to decide the case, the Court would have a difficult task. In the Court's view, however, the case does not hinge there.

The Court is persuaded by other evidence that Lance, at time of closing, understood the note would have to be paid in full if he sold the property.

First, the contract of January 10, 1978 [9], says: "Seller reserves right to approve any transfer of loan that might occur". Defendants argue that the contract "merged" into the note and deed of trust, and therefore the contract is not applicable to the issues in this suit.[10] The argument is inapposite. The issue is not whether the note and deed of trust override the contract. The issue is what the parties meant by the typed phrase. The contract, in the Court's view, is relevant on the issue of intent. On that issue, it is obvious that there would be no occasion to "transfer" the loan unless the property was sold. No one would be expected to assume responsibility for Lance's debt unless they bought the property. If plaintiff disapproved the "transfer" of Lance's obligation to new obligors, the loan would have to be paid. The contract language is susceptible of no other rational interpretation.

Second, Lance testified that when he decided to sell the property to the Smeads, his original proposal was for the Smeads to be "substituted", and himself released from "responsibility" on the note. Maxine contacted plaintiff on Lance's behalf to seek plaintiff's consent. If Lance had believed the loan was assumable by his vendees, he

would have found it unnecessary to ask plaintiff's consent.

Third, Lance testified he understood the note to mean that if he should sell the property, plaintiff "had the right to approve new financing". To the Court, this can mean only one thing: unless plaintiff was willing to finance the new owners, plaintiff was entitled to be paid in full.

In sum, the Court is persuaded that Lance, at the time he signed the note and deed of trust, realized the financing arrangement would remain in effect only so long as he owned the property, and that if he sold it, his successors could not simply move in and assume the loan in his stead. The Court finds that Lance understood plaintiff had the right to demand payment in full if he sold the property, unless she was willing to finance the new owners.

By reason of these findings, the Court need not rule on the admissibility of Plaintiff's Exhibit 10.[11]

Having found that Lance understood the typed phrase to be a "due on sale" clause [12], the Court must next consider defendants' argument that the typed phrase is too vague for that purpose.[13] Defendants cite *McDown v. Wilson*, 426 S.W.2d 112 (Mo.App.1968) for the proposition that there must be an express provision in a note in order to accelerate its maturity. This rule, while undeniably sound, is of scant aid in determining whether the typed phrase here is sufficient to serve its intended purpose. Understandably, neither side found a case with facts resembling these.

It is the Court's belief that if language, however inartful, is understood by all parties to mean the same thing, it is not the function of judges to ignore the parties' intent simply because a trained legal gram-

---

9. P. Ex.1.

10. First and second paragraphs, Part III, page 6, defendants' brief filed September 24, 1982.

11. Plaintiff offered Plaintiff's Exhibit 10 as a (1) past recollection recorded, or (2) business record. See pages 6 and 7, plaintiff's suggestions filed August 17, 1982. The issue of admissibility was taken with the case.

12. Plaintiff's intent was not in issue. Plaintiff, throughout, took the position that the note was due in full if Lance sold the property.

13. Part "B", pages 7 through 12, defendants' brief filed September 24, 1982.

marian could have composed a better phrase. A court should not be concerned with what the parties might have said, or with what they perhaps should have said. *Brackett v. Easton Boot and Shoe Co.,* 388 S.W.2d 842 (Mo.1965). A court should enforce the agreement the parties made. A party should not receive more than he bargained for just because the bargain was not written up as professionally as it could have been.

Having found that the parties here intended the typed phrase to be a "due on sale" clause, the Court holds the typed phrase is sufficient for that purpose.

The next issue is whether the transaction of March 21, 1981, between Lance and the Smeads was a "sale" of the property, thereby accelerating the note under the "due on sale" clause. According to the contract[14] signed that date by those parties, the Smeads paid Lance $23,000.00 down, against a total price of $74,500.00. The $51,500.00 balance was to be paid in monthly installments of $467.98 at an annual interest rate of ten per cent, with the "entire balance" due March 6, 1993. Lance placed a warranty deed in escrow, to be delivered to the Smeads "upon maturity". The Smeads took possession of the property, and were to keep it in good repair, free of liens, and insured for at least $51,500.00. The Smeads were to pay all taxes and special assessments. The Lance-Smead contract also contained carefully drafted provisions regarding Lance's note to plaintiff, spelling out the rights and duties between Lance and the Smeads regarding plaintiff's note. The property is currently occupied by the Smeads, and Lance is residing in Imperial, Pennsylvania.

In the Court's view, the transaction between Lance and the Smeads was unquestionably a sale, despite the cosmetics applied by the imaginative draftsman of the Lance-Smead contract. The Court holds the transaction activated the "due on sale" clause.

Defendants next argue that a Missouri court should not enforce a due on sale clause because it places an unreasonable restraint on alienation. Defendants candidly admit however, that no appellate court has declared a due on sale clause invalid per se. Those jurisdictions which have considered the issue have reached disparate results.[15] Some courts uniformly enforce due on sale clauses, reasoning that they are bargained for and encourage the flow of mortgage money.[16] Other courts hold that due on sale clauses are enforceable only if reasonably necessary to protect against impairment of security or risk of default.[17] Neither side cited a Missouri case.

Defendants argue that this Court should not enforce the due on sale clause here because plaintiff's security is not impaired and her only motive in accelerating the note is to get more interest on her money.[18]

This Court has no idea how the Supreme Court of Missouri will treat due on sale clauses. Predicting that Court is akin to forecasting Ozarks weather, though less scientific.

Assuming the issue is an open question in Missouri, this Court believes the prudent course for a trial court is to enforce the agreement the parties made. If it is to be the public policy of Missouri to only enforce such clauses selectively, rather than uniformly, a higher court than this one should so declare. Such issues as (a) criteria for enforcement, (b) quantum of proof necessary, and (c) who bears the risk of non-persuasion, are not for this Court to decide.

Apart from these considerations, there is an additional reason why it would be unseemly for this Court to invalidate the due on sale clause. The Supreme Court of the

14. P. Ex.4.

15. Part "D", pages 15 and 16, defendants' brief filed September 24, 1982.

16. *Ibid.,* footnote 15.

17. *Ibid.,* footnote 15.

18. The interest rate on Lance's note to plaintiff is nine per cent per annum.

United States has recently upheld the authority of the Federal Home Loan Bank Board to promulgate a regulation authorizing federal savings and loan associations to include due on sale clauses in their loan instruments, despite state law limiting a lender's right to exercise such clauses to cases where the lender can demonstrate that sale of the property has impaired its security. *Fidelity Federal Savings and Loan Association v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). It would be anomalous if, in Missouri, a federal savings and loan association could enforce a due on sale clause under circumstances where other lenders could not.

Having decided to follow the cases which uphold due on sale clauses uniformly, rather than selectively, it is unncessary for this Court to decide whether plaintiff's security is impaired by Lance's sale to the Smeads, and the Court expresses no opinion.

In reaching its decision the Court has not overlooked defendants' argument that plaintiff was in a superior bargaining position to Lance. The Court finds the argument unpersuasive. Plaintiff is an elderly widow who financed the sale of her family home to a well educated married couple.[19] Neither party was represented by counsel during the negotiations or at the closing. There was no unequal footing, or overreaching.

Plaintiff's attorney should prepare a judgment granting plaintiff the relief sought against all defendants in Counts I and II of plaintiff's petition. Additionally, the judgment should find the issues in favor of plaintiff and against Lance and the Smeads on all five Counts of the counterclaim.[20] Costs should be taxed against defendants.

The judgment should be sent to defendants' attorney for approval as to form, then to the Court for entry.

Plaintiff's counsel should pick up Plaintiff's Exhibits 1 through 5, and 8 through 10, at his earliest convenience.

October 26, 1982.

s/ John C. Crow
John C. Crow
Circuit Judge

## EXHIBIT B

## JUDGMENT

BE IT REMEMBERED that on the 24th day of June, 1982, this civil action came on for trial before the Court.

The Plaintiff appeared in person and by her attorneys, Daniel, Clampett, Rittershouse, Dalton and Powell, and announced ready for trial.

The Defendants Lance S. Granger, Donald E. Smead and Susan C. Smead appeared in person and by their attorney, Bruce K. Kirby, and announced ready for trial. Defendant Judith Granger did not appear, having filed "Suggestions of Bankruptcy" on May 19, 1982.

Evidence was presented: and, thereafter, written briefs were presented to, and considered by, the Court.

BE IT REMEMBERED FURTHER, that on the 26th day of October, 1982, the Court, having considered the evidence, having studied written briefs, and being fully advised in the premises, doth make and enter findings of fact and conclusions of law incorporated in the Court's Memorandum which has been filed in this case, and which Memorandum is the Court's statement of the grounds for its decision. Rule 73.01(a)(2).

THE COURT DOES FURTHER make and enter JUDGMENT and it is ORDERED AND ADJUDGED:

1. That, upon Count I of the Petition, the following declarations should be and hereby are, made and entered:

---

**19.** Lance testified he is an environmental engineer, and Jim recalled that Judith was a pharmacist. Lance's business acumen is demonstrated by the fact that he is receiving ten per cent annual interest from the Smeads, while paying plaintiff only nine.

**20.** Judith filed no counterclaim.

(a) That there is an actual controversy between the parties.

(b) That Plaintiff has no adequate remedy at law.

(c) That the promissory note and deed of trust held by Plaintiff are in default by reason of the contract for sale of real estate made without Plaintiff's written consent.

(d) That Plaintiff has the right to accelerate the promissory note and to have payment in full thereof.

(e) That Plaintiff has made demand for payment in full of the promissory note and the promissory note has not been paid.

2. That upon Count II of the Petition, it is ORDERED:

(a) That the real property which secures the payment of the promissory note held by Plaintiff now found to be in default, to-wit:

"Beginning at a point on the east side of the National Boulevard 706.1 feet north of the south line of the northwest fractional quarter of Section 30, Township 29, Range 21, thence east along the north line of Meadowmere Lane 140 feet, thence north 150 feet, thence west 140 feet to the east line of National Boulevard, thence south 150 feet to the place of beginning, in the City of Springfield, Greene County, Missouri."

be sold at auction by the Sheriff of Greene County, Missouri, in accordance with law and with the Statutes of Missouri for a judicial foreclosure sale of real property, that the proceeds from the sale thereof be applied to the costs of foreclosure, including an attorney's fee as provided by the promissory note and deed of trust, then to the payment of all principal and interest owing to Plaintiff.

(b) The balance of the sale proceeds, if any, shall be paid to Defendants Lance S. Granger and Judith K. Granger as their interests may appear.

3. That upon Counts I, II, III, IV and V of Defendants' Counterclaim, the Court finds the issues in favor of the Plaintiff on each Count and against the Defendants Lance S. Granger, Donald E. Smead, and Susan C. Smead.

4. That Plaintiff recover of the Defendants her costs.

s/  John C. Crow
Circuit Judge

Dated this 8 day of December, 1982.