Robert JOSEPHSON, et al., Appellants,

v.

NATIONAL SCREEN SERVICE
GROUP, INC., Respondents.

No. WD 43485.

Missouri Court of Appeals,
Western District.

June 11, 1991.

Jorge A. Elliott, Kansas City, for appellants.

Douglas L. Carter, Kansas City, for respondents.

Before SHANGLER, P.J., and
KENNEDY and FENNER, JJ.

KENNEDY, Judge.

Plaintiffs appeal from summary judgment entered by the court in their unlawful detainer action against defendant.

Plaintiffs are the fee owners of land at 1800 Baltimore Street in Kansas City, Missouri, and defendant is the tenant thereof under a 99-year ground lease dated 15 October 1919.

The lease requires the tenant to pay the real estate taxes before they become delinquent, and to keep the improvements insured against loss or damage by fire or cyclone.

The lease also requires the tenant to "furnish to the landlord an abstractor's certificate or other evidence acceptable to the landlord showing the condition of said property with respect to the payment [of the taxes]". The lease provides for tenant's forfeiture upon the tenant's default, as will be discussed later.

In 1986, the then tenant under the ground lease, National Screen Service Corporation, assigned its rights under the ground lease to defendant here, National Screen Service Group, Inc. Defendant on October 20, 1986, in connection with the assignment, requested landlord plaintiffs, in accordance with the terms of the lease, to certify that the assignor was not in default at the time of the assignment.

In the course of a lengthy letter to defendant dated August 19, 1987, plaintiffs' attorney said: "You have requested that my client acknowledge this transfer and in so doing, acknowledge that there is no default and that all of the requirements imposed upon the lessee have been fulfilled. My client is unwilling to make such a waiver since we are still investigating the possibility that a default has occurred." Later in the letter he wrote: "Please provide certification and evidence of timely real estate tax payment and insurance coverage."

Neither plaintiffs nor their attorney received any response to this letter. Sixty days later (October 19, 1987), plaintiffs' attorney wrote to defendant the following: "I am enclosing a copy of my letter dated August 19, 1987 directed to your office. I have not received a reply and therefore must consider this a breach of the lease provisions. Please be advised that this notice of default is given pursuant to the terms of the lease and the terms and conditions respecting such default."

Thereupon defendant sent to plaintiffs a current tax receipt (for the most recent year, 1986) and a copy of an insurance binder.

Plaintiffs thereafter filed this unlawful detainer lawsuit, claiming they were entitled to possession of the land and improvements covered by the lease. The default upon which plaintiffs rely is the failure of defendant to provide to it proof of timely payment of real estate taxes and insurance coverage in response to their attorney's request in his August 19, 1987, letter. The alleged default does not consist of any failure to pay the taxes in timely fashion, or of any failure to maintain the required insurance coverage, but the failure, as noted, to furnish evidence thereof.

■ The notice of default upon which the landlords rely was their attorney's letter of October 19, 1987, and particularly that portion of it which we have copied above. In order for a forfeiture to occur under the terms of a lease, however, it is not sufficient to advise the tenant—as was done in the October 19 letter—that he is in default. There must be an unequivocal election by the landlord to declare a forfeiture and terminate the lease. 49 Am. Jur.2d, *Landlord and Tenant*, § 1022. The October 19 letter makes no such declaration.

Neither did the October 19 letter state any reason for a forfeiture. It refers to the August 19 letter—which dealt with several subjects—and one would have to search the letters and the lease to find what the tenant's default was. This is another fatal shortcoming of the alleged notice of forfeiture. *Independence Flying*

*Service, Inc. v. Abitz*, 386 S.W.2d 399, 404 (Mo.1965). Incidentally, the lease does not require tenant to furnish the landlord evidence of the existence of insurance, as requested by the August 19 letter, but only of the status of the taxes.

■ Landlords contend that no notice of default or forfeiture was necessary under the lease. The lease provided for a 20–day or a 30–day grace period (the length of the grace period depending on whether tenant had completed improvements on the land) for the performance by tenant of lease obligations, and provided also that forfeiture would not occur without a 10–day notice of intention to declare a forfeiture. Such 10–day notice of forfeiture was dispensed with unless tenant had designated a Kansas City bank or trust company to receive the notice. There was no current designation of such a bank or trust company. It is therefore true, as landlord says, that no 10–day notice of forfeiture was required under the express terms of the lease, but this does not mean that notice of forfeiture was not required in order to terminate the lease. Forfeiture did not occur ipso facto upon the happening of the default; the default only entitled the landlords to declare a forfeiture, 49 Am.Jur.2d, *Landlord and Tenant*, § 1022, and this their October 19 letter did not do.

We do not mean to hold that the technical defaults of the tenants in this case would have entitled the landlords to the forfeiture, even if they had in clear and unequivocal terms notified the tenant of an election to terminate the lease. We do not reach that question. The courts, in their abhorrence of forfeitures, search for legal reasons not to enforce them, and hold parties seeking to enforce them to a scrupulous observance of all legal and contractual requirements. *See, e.g., Boyd v. Boone Management, Inc.*, 676 S.W.2d 24, 26–27 (Mo.App.1984).

■ Plaintiffs, in this court for the first time, contest the jurisdiction of the circuit judge who entered the summary judgment. The case was transferred by the associate circuit judge before whom the case was initially pending, to the presiding judge of the circuit for "reassignment as an associ-

ate circuit judge case" because a demand for a jury trial had been made. The presiding judge, however, assigned the case to Circuit Judge Donald L. Mason.

Plaintiffs say the presiding judge had authority to reassign the case only to an associate circuit judge. Section 534.060, RSMo 1986, authorizes the assignment of a Chapter 534 unlawful detainer action to a circuit judge by specific order. This is recognized by *Crossroads West Shopping Center, Ltd., v. American Oil Co.*, 658 S.W.2d 445 (Mo.App.1983), where the judgment of a circuit judge was reversed only because such an express assignment had not been made. Circuit Judge Donald Mason had jurisdiction to act in the case.

The judgment in favor of defendant is affirmed.

All concur.