**In re TARKIO COLLEGE, Debtor.**

**Bankruptcy No. 91–50261–ABF.**

United States Bankruptcy Court, W.D. Missouri.

May 13, 1996.

**17. Bankruptcy ⬯2853.20(2)**

To determine whether compensation requested by oversecured creditor is reasonable, actual, and necessary requires fee application with certain content and specificity. Bankr.Code, 11 U.S.C.A. §§ 330(a)(1), 506(b).

---

Michael F. Flanagan, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for Debtor.

J. Brian Hill, Shultz, Bender, Maher, Lee, Sexton & Hill, Gladstone, MO, for Claimant.

### *MEMORANDUM OPINION*

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Debtor objects to the amount of the claim of First Bank Investors' Trust ("FBIT"). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that FBIT's note has not been properly accelerated, and has therefore accrued interest throughout this bankruptcy at the contract rate of twelve per cent per annum, not the default rate of sixteen percent. I further find that the costs of collection sought by FBIT should be allowed in full, except as to charges for salary paid to in-house counsel.

### *FACTUAL BACKGROUND*

Tarkio College ("Tarkio" or "debtor") executed a Promissory Note (the "Note") secured by a Deed of Trust with First Bank of Butler, FBIT's predecessor-in-interest, on June 29, 1990, in the principal amount of $900,000.00. The Note provided that Tarkio would repay the loan in twenty quarterly installments commencing October 1, 1990, at a fixed rate of interest of twelve percent per annum. The Note also provided that First Bank of Butler could accelerate the Note if debtor failed to make a payment on time or in the amount due. The Note further provided that any unpaid balance owing after maturity would accrue interest at a rate of sixteen percent per annum. This "Post Maturity Rate" is applicable as of the date the last payment was due or the date FBIT accelerated payment on the Note, whichever was earlier. Tarkio failed to make its quarterly payment on January 1, 1991. First Bank of Butler advised debtor by letter written May 14, 1991, that it was in default and that it must come forward within ten days with "full payment of the unpaid principal, $862,396.39, and unpaid and accrued interest of $38,-793.70." FBIT's Ex. # K. First Bank of Butler also informed debtor in said letter that interest was accruing at a rate of $283.528 per day, or twelve percent per annum. *Id.* Debtor filed its Chapter 11 bankruptcy petition three days later on May 17, 1991. If FBIT accelerated the Note prior to the bankruptcy filing, it would be entitled to interest at the Post Maturity Rate of sixteen percent. Otherwise, the interest rate on the Note is twelve percent.

In addition to real estate secured by the Deed of Trust, the Note held by FBIT was secured by equipment, accounts, instruments, documents, chattel paper and other rights to payment, general intangibles, contract rights, and claims or potential claims against third parties. FBIT's Ex. # C. One of the potential claims against third parties was a malpractice claim against the accounting firm of Deloitte & Touche. Debtor has now settled said claim against Deloitte & Touche, and as a result approximately $3,500,000.00 is on deposit in debtor's bank accounts for distribution to creditors. Therefore, FBIT's claim, which had appeared to be undersecured during the course of the bankruptcy process, is now oversecured.

This is a liquidating Chapter 11, and debtor has acted as its own liquidating agent since this Court confirmed Debtor's First Amended Plan of Liquidation Dated January 13, 1992, (the "Plan") on February 26, 1992. In that capacity, Tarkio has liquidated assets subject to FBIT's lien, and paid the proceeds over to FBIT. On February 20, 1996, after receipt of settlement proceeds from Deloitte Touche, Debtor filed a Motion Requesting Authority to Pay in Full the Allowed Secured Claim of First Bank Investor's Trust (the "Motion"). Doc. # 608. Pursuant to documents submitted to debtor, FBIT had claimed that the principal balance on the Note, as of January 8, 1996, was $267,832.06. Id., Ex. ## A, B, and C. This sum includes interest accruing at the fixed rate of twelve percent per annum during the term of the Note, and various fees, costs, and expenses which FBIT contends are allowed pursuant to 11 U.S.C. § 506(b).[1] Id. at ¶ 5, pg. 2. In the Motion debtor objected to some of the costs and expenses of collection FBIT was claiming and calculated the allowed secured claim of FBIT to be $233,063.53 as of January 8, 1996, with interest accruing at the rate of $76.62 per diem. Id. at ¶ 7, pg. 3. FBIT responded to the Motion by claiming that the Post Maturity Rate of sixteen percent per annum had been triggered by FBIT's letter of May 14, 1991, therefore, its remaining balance was $445,481.62, as of January 8, 1996, with interest accruing at the rate of $195.280 per diem. Doc. # 610. The debtor has debts to creditors other than FBIT, including former employees and the United States Department of Education, exceeding $10 million.

I note that FBIT's response, filed March 8, 1996, is the first time during the course of this bankruptcy case that FBIT has ever claimed a right to the Post Maturity Rate. In the letter of May 14, 1991, FBIT calculated the per diem charge at the rate of twelve percent per annum. FBIT's Ex. # K. On February 9, 1993, FBIT sent debtor a letter which set forth that the applicable interest rate was twelve percent. Debtor's Ex. # C. On March 18, 1994, Francis J. Voyticky, a trustee for FBIT, filed an affidavit with this Court enumerating the obligations owed to FBIT by debtor using an interest calculation of twelve percent. Debtor's Ex. # D.[2] On May 31, 1995, Citizens National Bank of Appleton City, Missouri, servicing agent for the Note, sent a letter to debtor requesting confirmation from debtor of the obligations owing to FBIT. Debtor's Ex. # B. Said letter stated that the balance had been calculated using an interest rate of twelve percent. Id. Betty Porter, President of Citizens National Bank of Appleton City, Missouri, signed Debtor's Exhibit B. Ms. Porter also testified that the Note had been set up to accrue interest at the fixed rate of twelve percent.

A hearing was conducted on the Motion and FBIT's objection thereto on March 20, 1996. There are two issues presented. The first issue is whether the letter of May 14, 1991, was sufficient to accelerate the principal balance of the loan and activate the Post Maturity Rate of sixteen percent per annum. The second issue is what expenses and costs of collection will be allowed pursuant to the Note and 11 U.S.C. §§ 506 and 330(a). As background to those issues, I will begin with a discussion of the rights of oversecured creditors in bankruptcy cases.

## DISCUSSION

Section 506(b) of the Bankruptcy Code reads as follows:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees,

---

1. Although some reference is made by FBIT to section 506(c), that section is not available to a creditor.

2. At the hearing, debtor asked the Court to take judicial notice of Mr. Voyticky's affidavit. FBIT's counsel objected, based on hearsay. The Court overruled the objection on two grounds. First, since the document was part of the Court record, and was relevant, judicial notice was appropriate. Doc. # 516. And secondly, the Court ruled that the document is an admission against interest and, therefore, not hearsay. Fed.R.Evid.Rule 801(d)(2).

costs, or charges provided for under the agreement under which such claim arose. 11 U.S.C. § 506(b). This section clearly specifies that an oversecured creditor's claim includes fees, costs, or charges provided for under the agreement between the parties, and found to be reasonable. The section also provides for the allowance of interest to oversecured creditors, but the comma between the words "claim" and "interest" makes it appear that such interest is not necessarily charged at the contract rate. FBIT argues that it properly accelerated the obligation, and that thereafter the agreement between the parties called for the default rate of sixteen percent. Even if that is the case, however, the language of section 506(b) may give courts flexibility to adjust a default interest rate based on the equities of the case. *In re W.S. Sheppley & Co.*, 62 B.R. 271, 278 (Bankr.N.D.Iowa 1986). *But see, In re Skyler Ridge*, 80 B.R. 500, 511 (Bankr.C.D.Cal. 1987) (where the bankruptcy court held it was bound to enforce the agreed-upon default rate if enforceable under state law); *In re Schaumburg Hotel Owner Ltd. Partnership*, 97 B.R. 943, 951 (Bankr.N.D.Ill.1989) (where the court enumerates factors to consider in determining whether to enforce the agreed-upon default rate under section 506(b)). Tarkio does not argue, however, that this Court should rely on any such flexibility to knock out the Post Maturity Rate. Instead, debtor contends that the obligation was never properly accelerated, so the higher rate was never triggered. Since I agree with the debtor on that point, I need not decide whether section 506(b) can be used to reduce an agreed-upon default rate.

### A. Acceleration

█ FBIT claims it accelerated the Note with a letter signed by Richard A. Koehler, Vice President, dated May 14, 1991. The letter states:

As I'm sure you are aware, the college did not meet its quarterly payment of $60,-495.00 which was due on Jan. 01, 1991. It did send $25,000.00 on 02/01/91 which the bank credited against accrued interest. The College has met the quarterly payment of $60,495.00 which was due April 01, 1991.

This is to advise you, for the college, that First Bank deems Tarkio College in default of its promissory note to First Bank with respect to the referenced loan transaction. Accordingly First Bank requests Tarkio College to now come forward within the next ten (10) days with full payment of the unpaid principal, $862,-396.39, and unpaid and accrued interest of $38,793.70 as of this day, 05/14/91. Interest is accruing at a rate of $283.528 per day.

FBIT's Ex. # K. FBIT argues that this letter had the effect of accelerating the debt evidenced by the Note and triggering the Post Maturity Rate of sixteen percent provided for by the Note.

█ A debtor's failure to pay an obligation on the due date does not automatically mature the entire debt, despite the presence of an acceleration clause in the agreement. *Capital City Motors, Inc. v. Thomas W. Garland, Inc.*, 363 S.W.2d 575, 578 (Mo.1962) (citations omitted). *See also Josephson v. Nat'l Screen Serv. Group, Inc.*, 810 S.W.2d 708, 709 (Mo.Ct.App.1991) (holding that an automatic forfeiture-upon-default clause does not mean a notice of forfeiture is not required in order to terminate a lease). An acceleration clause does no more than give a creditor the option to treat the debt as due. *Id.* In order to exercise the option, the creditor is required to perform some affirmative, overt act evidencing its intention to accelerate the debt. *Spires v. Lawless*, 493 S.W.2d 65, 73 (Mo.Ct.App.1973). FBIT arguably undertook an affirmative act to accelerate the debt by its letter of May 14, 1991. In order for acceleration to occur, however, the affirmative act to accelerate the debt must be completed before the debtor tenders the amount due. *Id.* The option to accelerate the debt is terminated by proper tender of performance. *Id.* The tender of the amount and interest due prior to the completed acceleration, therefore, cures any default. In the letter of May 14, 1991, First Bank of Butler informed Tarkio that it was in default of its Note. FBIT's Ex. # K. It further declared that "First Bank requests Tarkio College to now come forward within

the next ten (10) days with full payment of the unpaid principal, $862,396.39, and unpaid and accrued interest of $38,793.70 as of this day, 05/14/91. Interest is accruing at a rate of $283.528 per day." *Id.* I note that the interest and per diem figures used in the letter reflect that interest was and would continue to accrue at twelve percent per annum. It is not clear by the wording of said letter if First Bank of Butler intended the Note to be accelerated as of May 14, 1991, or May 24, 1991.

■ If First Bank intended the Note to be accelerated as of May 14, 1991, it could have demanded the Post Maturity Rate as of that time. That it clearly did not do. A lender must show an unmistakable intention to exercise the option to accelerate by taking steps to foreclose or indicating that interest is accruing at the Post Maturity Rate. *In re LHD Realty Corp.*, 726 F.2d 327, 331 (7th Cir.1984). First Bank took no such steps.

■ FBIT argued at the hearing that the letter of May 14, 1991, accelerated the debt as of May 24, 1991. Indeed, FBIT now claims the Post Maturity Rate is due from May 24, 1991, not May 14, 1991. But debtor's bankruptcy petition was filed on May 17, 1991. Thereafter, the automatic stay prevented FBIT from taking any further affirmative act, such as sending a notice of acceleration to collect its debt. 11 U.S.C. § 362(a)(6). FBIT argues, however, that the May 14, 1991, letter caused the acceleration to happen automatically on May 24, 1991. In *Neusteter Realty Co. v. Holzman–Demuth Noteholders (In re Neusteter Realty Co.)*, 79 B.R. 30, 32 (D.Colo.1987) the court held that a pre-bankruptcy notice of intent to accelerate was sufficient to notify debtor that acceleration would occur if arrearages were not cured within ten days. Therefore, according to the *Neusteter* Court the filing of a bankruptcy petition within that ten day period did not prevent the acceleration from occurring automatically thereafter, since no further action by the creditor was required. FBIT's letter of May 14, 1991, however, did not state that the acceleration would be effective in ten days. Nor did the letter inform debtor of its right to cure prior to that time. *Capital City Motors, Inc. v. Thomas W. Garland, Inc.*,

363 S.W.2d 575, 579 (Mo.1962). Instead the letter stated that "First Bank requests Tarkio College to now come forward within the next ten (10) days with full payment" of the loan balance. Further, the letter of May 14, 1991, informed Tarkio that interest was accruing at the rate of twelve percent per annum and gave no indication that the Post Maturity Rate would be triggered at any time. Given the ambiguity in the letter regarding the date of acceleration, the letter was insufficient to effectuate automatic acceleration on May 24, 1991.

■ The acceleration of a Note is a harsh remedy. *Morris v. Granger*, 675 S.W.2d 15, 17 (Mo.Ct.App.1984). To be effective, "acceleration clauses in notes should be clear and unequivocal, and where there is a reasonable doubt as to the meaning of the terms employed, preference should be given to that construction which will avoid forfeiture and prevent acceleration of maturity." *Id.* The same applies to a notice of acceleration, because Missouri courts abhor forfeitures and search for legal reasons not to enforce them. *Josephson v. Nat'l Screen Serv. Group, Inc.*, 810 S.W.2d 708, 709 (Mo.Ct.App.1991). The letter of May 14, 1991, does not offer debtor a clear and unequivocal explanation of FBIT's rights or intentions. *See Executive Hills Home Builders, Inc. v. Whitley*, 770 S.W.2d 507, 509 (Mo.Ct.App. 1989). Missouri law, therefore, requires me to construe the letter of May 14, 1991, in a manner which prevents acceleration. *Id.* I find that First Bank of Butler did not properly accelerate its obligation by the letter of May 14, 1991. Since the filing of the bankruptcy prevented the bank from thereafter taking any affirmative action to accelerate, the Note has never been accelerated. As stated in all previous documents filed with this Court by FBIT prior to March 8, 1996, FBIT's Note continued to accrue interest at the rate of twelve percent.

### B. Costs of Collection

■ FBIT included in its claim certain "costs of collection" attributed to Betty Porter, Richard Koehler, and Francis Voyticky. Doc. # 608, Ex. A. FBIT argues that 11 U.S.C. § 506(b) provides for the "reasonable

fees, costs, or charges provided for under the agreement under which such claim arose." I agree with FBIT that an oversecured creditor is entitled to its reasonable fees, costs, and expenses pursuant to 11 U.S.C. § 506(b). In addition, an oversecured creditor is subject to the statutory requirement that said fees, costs, and expenses were incurred for actual and necessary services pursuant to 11 U.S.C. § 330(a)(1).[3] *In re Kroh Brothers Development Co.*, 105 B.R. 515, 522 (Bankr. W.D.Mo.1989).

FBIT submitted a fee application for reimbursement of payments it has already made to Ms. Porter, Mr. Voyticky, and Mr. Koehler. As to the Porter and Voticky expenses, debtor indicated at the hearing that it had no objection. I, therefore, find that FBIT is allowed to charge said expenses totaling $1,499.47 to the loan.

▆▆▆ Richard Koehler, a Vice President of First Bank of Butler, was the loan officer for the Tarkio loan. FBIT's Ex. # K. As such, while an attorney, he was also an employee of First Bank of Butler. First Bank of Butler was sold on September 1, 1992. From that time forward, Mr. Koehler billed FBIT on an hourly basis for his services. Debtor objects to fees and expenses charged to the Note and incurred by Mr. Koehler from May 17, 1991, through December 21, 1993. FBIT's Ex. # I; Doc. # 608 Ex. # A. There do not appear to be any grounds for debtor's objections to Mr. Koehler's fees for the period after the bank was sold. FBIT's Exhibit I includes a detailed accounting of Mr. Koehler's fees and expenses with a contemporaneous explanation of the services he was providing for FBIT over that period of time. Mr. Koehler's fees, which were paid by FBIT and charged to the loan, totaled $20,752.00. Mr. Koehler's expenses over the same period of time totaled $1,299.59. Doc. # 608 Ex.

# A; FBIT's Ex. # I. Such fees and expenses are allowed.

▆▆▆ FBIT also charged to the loan as a cost of collection the following: (1) "(⅛)th salary 7.5 mo.s '91[:] $3,086.88; and (2) (⅛)th Salary 8.0 mo.s '92[:] $3,333.33." Doc. # 608 Ex. # A. These costs were apparently representative of the portion of Mr. Koehler's time devoted to the Tarkio loan when he was a Vice President of First Bank of Butler. No explanation or documentation of the amount of time devoted to the Tarkio loan during this period of time was introduced at the hearing. An oversecured creditor is not barred from recovering in-house counsel fees if fees are authorized by contract, and if the creditor can demonstrate that the fees were reasonable, actual, and necessary. *Milgard Tempering, Inc. v. Selas Corp. of America*, 761 F.2d 553, 558 (9th Cir.1985). To determine whether compensation requested is reasonable, actual, and necessary requires a fee application with certain content and specificity. *In re Interstate Stores, Inc.*, 437 F.Supp. 14, 16 (S.D.N.Y.1977). FBIT submitted no fee application for this period. I have no evidence of any work which Mr. Koehler provided for First Bank of Butler while he was employed by the bank, prior to September 1, 1992. I, therefore, sustain debtor's objection to fees totaling $6,420.21 which were charged to the loan on August 24, 1993.

For all of the above reasons, debtor's Motion Requesting Authority to Pay in Full the Allowed Secured Claim of First Bank Investors' Trust with interest accruing at the rate of twelve percent per annum, is GRANTED. FBIT's Objection to Motion Requesting Authority to Pay in Full the Allowed Secured Claim of First Bank Investors' Trust is SUSTAINED IN PART and OVERRULED IN PART. The amount due FBIT as of January 8, 1996, is $267,832.06 less the fees of

---

**3.** Section 330(a) states:

(a) After notice to any parties in interest and to the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to ... a professional person employed under section 327 or 1103—

(1) reasonable compensation for actual, necessary services rendered by such ... attorney ... and by any paraprofessional person employed by such ... attorney ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title: and

(2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a). I note that the Bankruptcy Reform Act of 1994 amended section 330(a), however, the new section 330(a) applies only to cases filed after October 22, 1994.

$6,420.21, and less the interest FBIT has charged as to such fees since August 24, 1993. The remaining balance has accrued interest, since January 8, 1996, at the rate of twelve percent and will continue to accrue interest at such rate until paid.