# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

LARRY R. FOSTER and )
LINDA H. JOHNSTON, Trustees )
of the HENRY ROGERS FOSTER )
TRUST, )
)
    Plaintiffs/Appellees, )
)
)
VS. )
)
)
JAY W. SHIM, )
)
    Defendant/Appellant. )

**FILED**

**May 9, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

Davidson Circuit
No. 95C-1078

Appeal No.
01A01-9512-CV-00569

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE WALTER C. KURTZ, JUDGE

For the Plaintiffs/Appellees:

Philip D. Irwin
Neal & Harwell
Nashville, Tennessee

For the Defendant/Appellant:

James C. Hofstetter
Nashville, Tennessee

## REVERSED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves the lease of a grocery store in Nashville. Following the landlord's death, the trust succeeding to the landlord's interest filed an unlawful detainer action in the Davidson County General Sessions Court seeking to recover possession of the property. The tenant appealed the adverse judgment to the Circuit Court for Davidson County. The circuit court granted the trust's motion for summary judgment after finding that the tenant had breached the lease by failing to make timely and sufficient lease payments. We have determined that the summary judgment must be reversed because the trust has failed to demonstrate that it was entitled to a judgment as a matter of law.

## **I.**

Henry Rogers Foster owned two contiguous parcels of property at the corner of Robertson Road and Croley Drive in Nashville. A cinder block building housing a grocery store was located on one of the parcels. Mr. Foster leased the property to James "Bill" Hood in June 1984. The original term of the lease lasted until February 28, 1988, and the lease agreement contained four five-year renewal options. These renewal options could be "exercised automatically without the necessity of notice to Owner." The lease agreement also required lease payments starting at $525 per month but permitted the landlord to raise the lease payments by $50 per month in every odd-numbered year.

On March 27, 1987, Mr. Hood assigned the lease to Jay Shim. Three days later, Messrs. Foster and Shim negotiated a new lease containing essentially the same provisions as those in Mr. Hood's lease. The initial term of Mr. Shim's lease was from April 1, 1987 to February 28, 1988, and the lease contained four five-year automatic renewal options. The lease payments began at $650 per month and could be raised by $50 per month in every odd-numbered year. The $25 difference between Mr. Shim's initial monthly payments and the payments under Mr. Hood's lease plays a significant role in this dispute.

In May 1988, Mr. Shim sublet the grocery store to Amal G. Mehta. The terms of this agreement tracked those in Mr. Shim's lease; however, the sublease

required Mr. Mehta to pay Mr. Shim $850 per month and provided that Mr. Shim could increase the rent $50 per month in odd-numbered years. At the outset of the sublease, Mr. Mehta sent the monthly lease payments directly to Mr. Foster.[1]

Ownership of the property passed to the Henry Rogers Foster trust after Mr. Foster's death in 1994. Larry Foster and Linda Johnston, Mr. Foster's children, were the trustees. In apparent ignorance of the 1987 lease between her father and Mr. Shim, Ms. Johnston, informed Mr. Shim in August 1994 that the trust considered him to be a month-to-month tenant because he did not have an enforceable lease.[2] She also informed Mr. Shim that the property was for sale and that he would be required to vacate the premises in thirty days if the property sold.

Mr. Shim, like Ms. Johnston, did not have a signed copy of the 1987 lease. In December 1994, he began making the lease payments directly to the Foster trust. His December 1994 payment was consistent with the 1987 lease but was thirteen days late. After Mr. Shim did not make the January 1995 lease payment on time, Mr. Foster wrote him a letter on January 10, 1995, stating:

> This letter serves as notification that you are delinquent on the rent for the Robertson Road Property. This is the second time in the last three months that you have been in arrears. Let me remind you that payment is due on the first of each month.
>
> This is also a reminder to you that on February 1st, 1995 your monthly payment will increase to 850.00 dollars per month.

Mr. Shim responded with a $775 payment - the amount required by the 1984 lease. Apparently, Mr. Shim had decided that the lease payments should be governed by the 1984 lease because Ms. Johnston had informed him that he did not have an enforceable lease and because he could not recall signing the 1987 lease.

---

[1]Mr. Shim's lease required written approval before subleasing the property. While Mr. Shim did not obtain written approval of the sublease to Mr. Mehta, he apparently obtained Mr. Foster's oral authorization. Mr. Foster accepted Mr. Mehta's lease payments and apparently decided to forego requiring written approval.

[2]In October 1994, the Foster trust contracted to sell the property to a third party, despite the provision in the 1987 lease giving Mr. Shim a first option to purchase. The trust warranted in the contract that "Jay Shim does not have an enforceable leasehold interest in the Property."

Mr. Shim made the February 1995 lease payment on time but the amount of the payment was $825 rather than $850 as required by the 1987 lease. On February 3, 1995, Mr. Foster sent Mr. Shim another letter stating:

> Thanks for sending your Feb. rent payment on time. However, your rent for Feb. had been increased to $850.00 per month. We only received $825.00. This serves as notice that you are $25.00 in arrears for Feb.
>
> Also, your payment for Jan. 1995 should have been $800.00. You only paid $775.00. Therefore, you are also $25.00 in arrears for Jan.
>
> Your attention to this matter would be greatly appreciated.

The Foster trust's lawyer notified Mr. Shim on February 16, 1995, that the trust had terminated the lease because the January lease payment was late and insufficient. On March 1, 1995, the trust filed an unlawful detainer action in the Davidson County General Sessions Court. At the hearing in general sessions court, the Foster trust produced a signed copy of the 1987 lease, notwithstanding its earlier insistence that Mr. Shim did not have an enforceable lease.[3] The general sessions court awarded the trust possession of the property and dismissed Mr. Shim's counterclaim for overpayment of rent. Mr. Shim perfected a de novo appeal to the Circuit Court for Davidson County.

The Foster trust moved for a summary judgment shortly after the case was docketed in the circuit court. On August 18, 1995, the circuit court found that Messrs. Shim and Foster had entered into a valid lease on or about March 30, 1987, that Mr. Shim had defaulted by failing to pay rent when due for the months of January, February, and March 1995, that the Foster trust had provided Mr. Shim timely written notice of the breach and had given him in excess of thirty days to remedy the breach, and that Mr. Shim had not remedied the breach. Accordingly, the trial court granted the Foster trust a summary judgment terminating the lease and awarding the trust possession of the premises.

---

[3]Ms. Johnston stated in an affidavit filed in the circuit court that her attorney provided her a copy of the 1987 lease "shortly before" the hearing in general sessions court and that Mr. Shim had indicated earlier that he would provide her with a signed copy of the lease but had failed to do so.

## II.

We turn first to a threshold issue concerning the circuit court's subject matter jurisdiction over this case. Even though Mr. Shim apparently concedes that the trial court has subject matter jurisdiction to hear de novo appeals from general sessions court, he asserts that the unlawful detainer action was somehow transformed into an equitable proceeding when he asserted equitable defenses against the Foster trust's unlawful detainer claim. Accordingly, Mr. Shim asserts that Tenn. Code Ann. § 16-10-111 (1980) required the trial court to transfer the case to the chancery court when he objected to the trial court's jurisdiction. We have determined that Mr. Shim's reliance on Tenn. Code Ann. § 16-10-111 is misplaced.

The concept of subject matter jurisdiction relates to a court's power to adjudicate a particular type of dispute. *Turpin v. Conner Bros. Excavating Co.,* 761 S.W.2d 296, 297 (Tenn. 1988); *Standard Sur. & Casualty Co. v. Sloan,* 180 Tenn. 220, 230, 173 S.W.2d 436, 440 (1943). Only the constitution, the common law, or a legislative act can confer subject matter jurisdiction on a court. *Kane v. Kane,* 547 S.W.2d 559, 560 (Tenn. 1977); *Computer Shoppe, Inc. v. State,* 780 S.W.2d 729, 734 (Tenn. Ct. App. 1989). It cannot be conferred by the acts or status of the parties. *Shelby County v. City of Memphis,* 211 Tenn. 410, 413, 365 S.W.2d 291, 292 (1963); *Brown v. Brown,* 198 Tenn. 600, 618, 281 S.W.2d 492, 501 (1955).

Unlawful detainer actions such as the one involved in this case may be filed in either general sessions court, circuit court, or chancery court. *Robinson v. Easter,* 208 Tenn. 147, 149, 344 S.W.2d 365, 365-66 (1961). Thus, unquestionably, the general sessions court had subject matter jurisdiction to adjudicate the Foster trust's unlawful detainer warrant. *See* Tenn. Code Ann. § 29-18-107 (1980). It is equally clear that the circuit court had subject matter jurisdiction to over Mr. Shim's de novo appeal from the general sessions judgment against him. *See* Tenn. Code Ann. §§ 16-10-112 & 16-15-729 (1994).

Mr. Shim's argument on subject matter jurisdiction overlooks two significant limitations on the application of Tenn. Code Ann. § 16-10-111. First,

the statute does not apply to cases in which the circuit court is exercising appellate jurisdiction over cases appealed from the general sessions court. *Riden v. Snider,* 832 S.W.2d 341, 343 (Tenn. Ct. App. 1991). Second, the statute does not apply to causes of action that may be filed in either a court of law or a court of equity. *Hamilton Nat'l Bank v. Champion,* 202 Tenn. 205, 212-13, 303 S.W.2d 731, 734 (1957); *Harris v. Buchignani,* 199 Tenn. 105, 111-12, 285 S.W.2d 108, 111 (1955); *Morgan v. Layne,* 165 Tenn. 513, 516-17, 56 S.W.2d 161, 162 (1933).

Unlawful detainer actions are statutory substitutes for essentially legal actions. *Newport Hous. Auth. v. Ballard,* 839 S.W.2d 86, 88-89 (Tenn. 1992). They may be filed in the general sessions court, the circuit court, or the chancery court. In this case, the Foster trust elected to file its unlawful detainer claim in the general sessions court, and the circuit court was exercising its appellate jurisdiction over the case when Mr. Shim perfected his de novo appeal. Accordingly, the trial court had two independent grounds for denying Mr. Shim's motion to transfer the case to chancery court.

## III.

Because the evidence is essentially undisputed, the controlling issue on this appeal is whether the Foster trust demonstrated that it is entitled to a judgment as a matter of law. Mr. Shim asserts that the Foster trust was not entitled to a judgment as a matter of law because its notices of default were insufficient and its possessory action was premature. We agree on both counts.

Among a landlord's most basic rights is the right to receive rent. *See* 5 *Thompson on Real Property* § 40.03(a), at 9 (David A. Thomas, ed. 1994) ("Thompson"). Accordingly, a landlord may terminate a lease for non-payment of rent if the right has been included in the lease. *Nashville Record Prods., Inc. v. Mr. Transmission, Inc.,* 623 S.W.2d 281, 283 (Tenn. Ct. App. 1981). Since terminating a lease results in forfeiture of the tenant's interest in the property, landlords must comply strictly with the termination provisions in the lease. *Arlen Realty, Inc. v. Dozier,* 393 So. 2d 489, 491 (Ala. Civ. App. 1980); *Korte v. National Super Mkts., Inc.,* 528 N.E.2d 10, 14 (Ill. App. Ct. 1988); Thompson, § 40.08(b)(2), at 59.

Landlords must also exercise their power of termination unequivocally. *Jack Moritz Co. Management v. Walker,* 429 N.W.2d 127, 130 (Iowa 1988); *Josephson v. National Screen Serv. Group, Inc.,* 810 S.W.2d 708, 709 (Mo. Ct. App. 1991); 2 Milton R. Friedman, *Friedman on Leases* § 16.2, at 1077 (4th ed. 1997). Accordingly, this court has held that a landlord's letter requesting a tenant to pay delinquent taxes was not an effective notice of termination because it did not state that the landlord considered the lease to be in default. *Turner v. Yow,* 657 S.W.2d 94, 97 (Tenn. Ct. App. 1983).

The 1987 lease agreement contained Mr. Shim's covenant that he would pay rent in accordance with the provisions of the lease agreement. It also contained a provision governing the procedure to be followed if Mr. Shim failed to pay his rent. This provision states, in part, that

> Should Tenant default by failure to pay rent or failure to comply materially with the other conditions set forth herein, and should such default continue for a period of thirty (30) days after written notice of such default, then Owner shall immediately have the right to take action to enforce his rights as provided herein, unless Tenant shall have, within the thirty-day period, cured the default. Should tenant fail to cure the default within the prescribed time, Owner may continue the lease and recover damages; or enter and take possession of the premises and rerent same, holding Tenant responsible for any reasonably foreseeable damages which occurred because of the default.

Ms. Shim's lease clearly conditions the right to terminate on the landlord first giving clear, unequivocal notice of default and on affording the tenant thirty days within which to cure the default.

Neither the January 10, 1995 letter nor the February 3, 1995 letter stated clearly that the Foster trust considered Mr. Shim to be in default or that it had elected to exercise its right to terminate the lease. Both letters could reasonably have been interpreted as simple reminders regarding the prompt payment of the correct amount of rent. The first formal notice Mr. Shim received that the Foster trust had elected to terminate the lease was the February 16, 1995 letter from the trust's lawyer. It follows that the Foster trust's unlawful detainer action filed on March 1, 1995 was premature. *See Coin Laundry Equip. Co. v. Gilbert,* 597 So. 2d 926, 927 (Fla. Dist. Ct. App. 1992).

**IV.**

We reverse the summary judgment and remand the case for further proceedings consistent with this opinion.[4]  We also tax the costs of this appeal to the Henry Rogers Foster trust for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, P.J., M.S.


_____
BEN H. CANTRELL, JUDGE

---

[4]Even though the courts may grant a summary judgment to a non-moving party, *March Group, Inc. v. Bellar,* 908 S.W.2d 956, 958-59 (Tenn. Ct. App. 1995), we decline to grant Mr. Shim a summary judgment because he did not seek a summary judgment in the trial court.  We also pretermit Mr. Shim's remaining issues in light of our decision that the Foster trust's unlawful detainer action was premature.